# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMUNITY HEALTH | ) | MASTER FILE NO. |
| SYSTEMS, INC., CUSTOMER | ) | 15-CV-222-KOB |
| SECURITY DATA BREACH | ) | THIS DOCUMENT |
| LITIGATION | ) | RELATES TO ALL CASES |
| (MDL 2595) | ) | |

## BRIEF IN SUPPORT OF COMMUNITY HEALTH SYSTEMS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, LACK OF SUBJECT MATTER JURISDICTION, AND FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

I.     INTRODUCTION.............................................................................     1

II.    STATEMENT OF FACTS...................................................................     4

III.   ARGUMENT AND AUTHORITIES....................................................     6

       A.     The Courts in Alabama, Florida, Indiana, Mississippi, New
              Mexico, Ohio, Pennsylvania, Washington, and West Virginia
              Lack Personal Jurisdiction Over CHSI.....................................     6

              1.     Those Courts Cannot Exercise Personal Jurisdiction
                     Over CHSI........................................................................     6

                     a.     Those Courts Lack General Personal Jurisdiction
                            Over CHSI.............................................................     7

                     b.     Those Courts Lack Specific Jurisdiction Over
                            CHSI.......................................................................    14

                            i.     CHSI Does Not Have Minimum Contacts
                                   With These Nine States..............................    14

                            ii.    There Is No Relationship Among CHSI,
                                   These Nine States, and Plaintiff's Claims...    16

                            iii.   Asserting Jurisdiction Over CHSI Would
                                   Be Neither Reasonable Nor Fair.................    16

       B.     This Court Lacks Subject Matter Jurisdiction Over CHSI........    17

       C.     Plaintiffs Failed To State Claim Against CHSI.......................    19

              1.     Standard of Review.........................................................    19

              2.     Plaintiffs Have Stated No Well-Pled Allegations
                     Against CHSI..................................................................    21

3.      Plaintiffs Have Failed To State A Claim For Breach Of Contract (Count I) Against CHSI.............................. 23

4.      Plaintiffs Have Failed To State A Claim For Breach Of Implied Contract (Count II) Against CHSI................ 24

5.      Plaintiffs Have Failed To State A Claim For Unjust Enrichment (Count III) Against CHSI............................ 25

6.      Plaintiffs Have Failed To State A Claim for Negligence/ Negligence Per Se (Counts IV-V) Against CHSI............. 27

7.      Plaintiffs Have Failed To State A Claim For Bailment (Count VI)........................................................ 28

8.      Plaintiffs Have Failed To State A Claim for Willful or Negligent Violation of FCRA (Counts VII-VIII) Against CHSI.................................................................. 28

9.      Plaintiffs Have Failed To State A Claim For Violation Of The Tennessee Identity Theft Deterrence Act of 1999 (Count X)........................................................ 29

IV.    CONCLUSION.................................................................... 29

# I.     INTRODUCTION

In a desperate attempt to maintain a national class action in Federal court, Plaintiffs direct their complaints of data theft not at the criminal hackers who stole their personal information or the hospitals that may have collected it, but rather at Community Health Systems, Inc. ("CHSI"), a Delaware holding company with no employees – a company that never possessed Plaintiffs' personal information. Plaintiffs do so even though the very SEC filings and website Plaintiffs cite in their complaint note that CHSI is a holding company and does not engage in any business other than those activities associated with being a publicly-traded company (e.g., registration with the SEC) – and notwithstanding the Declaration of Ben Fordham filed almost a year ago in the *Alverson* case, detailing that CHSI played no role in the data theft.  The Court should dismiss Plaintiffs' baseless claims against CHSI.

First, CHSI – a Delaware holding company with no employees, offices or agents in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia – is not subject to the personal jurisdiction of the courts in these nine states.[1] An MDL transferee court possesses the powers of each transferor court and, thus, the transferee court should analyze

---

[1] Sixteen cases filed in ten different states have been consolidated into this action.  CHSI moves to dismiss each case for lack of personal jurisdiction except for *Murphy v. Cmty. Health Sys., Inc. et al.*, 2:15-cv-281 and *Ellzey et al. v. Cmty. Health Sys., Inc. et al.,* No. 3:15-cv-00832, both of which were originally filed in the U.S. District Court for the Middle District of Tennessee. CHSI admits that the Tennessee court may constitutionally exercise personal jurisdiction over it.

whether a particular defendant is subject to personal jurisdiction where each case was originally filed. The courts of each of these nine states apply the traditional minimum contacts analysis to a motion to dismiss for lack of personal jurisdiction. Under that standard, these courts cannot constitutionally exercise personal jurisdiction over CHSI. CHSI's only relationship with the medical facilities referenced in the Consolidated Amended Class Action Complaint ("Complaint") is as a remote, indirect parent company.

CHSI does not transact business in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia and does not operate or even directly own the medical facilities referenced in the Complaint that operate in these states (the "Facilities").[2] Under basic tenets of corporate law, a parent company is typically not liable for the acts of a subsidiary. Equally basic is the concept that a parent company cannot be subjected to personal jurisdiction in a state based solely on the acts of a subsidiary. The exercise of personal jurisdiction over CHSI in these cases merely because it has a remote and indirect ownership

---

[2] The Complaint specifically references patients who were allegedly treated at different medical facilities in the nine transferor states and Alabama. The Complaint also specifically references additional patients who were allegedly treated at other medical facilities in an additional nine different states. The courts in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia obviously do not have personal jurisdiction over CHSI based on CHSI's alleged contacts with a subsidiary hospital in a different state like, say, New Jersey. As such, in the 12(b)(2) portion of this Motion, CHSI only refers to the referenced hospitals operating in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia.

interest in certain companies in these states would contradict settled personal jurisdiction jurisprudence and exceed even the outer limits of due process.

Likewise, CHSI's only relationship with CHSPSC, LLC ("CHSPSC") is as an indirect parent company. CHSI does not directly own CHSPSC, does not operate CHSPSC, and does not control the day-to-day operations of CHSPSC. Further, CHSI does not control or otherwise participate in any way in data operations at the Facilities or CHSPSC. CHSI never possessed any personal information of any patients referenced in the Complaint. Likewise, CHSI did not enter into an agreement or contract with any of the individuals referenced in the Complaint for the provision of medical services or the protection or security of their personal information. Nor did CHSI receive any money from Plaintiffs for medical services or otherwise.

Second, *subject matter* jurisdiction is not present in any of the sixteen cases consolidated in this action – including the actions filed in Tennessee – as Plaintiffs have no standing to assert any causes of action against CHSI. As noted, CHSI is a holding company with no employees, and CHSI never possessed any personal information of any patients referenced in the Complaint. As such, Plaintiffs simply cannot trace any injury to CHSI's conduct.

Third, all Plaintiffs have failed to state a claim upon which relief can be granted against CHSI as, among other things, Plaintiffs engage in impermissible, conclusory group pleading.

In short, this Court should dismiss Plaintiffs' claims against CHSI in fourteen of the sixteen consolidated cases for lack of personal jurisdiction and in all consolidated cases for lack of subject matter jurisdiction and for failure to state a claim. CHSI further incorporates by reference the arguments for dismissal in CHSPSC's Memorandum in Support of its Motion to Dismiss.

## II.    STATEMENT OF FACTS

Plaintiffs seek to hold CHSI liable for a number of causes of action based on the theft of personal information collected by certain medical facilities across the country when those facilities provided medical services to certain individuals. (*See* Compl.). Plaintiffs reference various specific hospitals in their Complaint and other unspecified "CHS affiliated" facilities that particular plaintiffs allegedly visited. (*See id.*).

CHSI does not operate or do business as any hospital, much less the facilities in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia identified by name in the Complaint. (Declaration of Ben Fordham ("Fordham Decl.") ¶¶ 3-20, attached as Exhibit A). Instead, separate legal entities own, operate, and do business as the Facilities. (*Id.*). CHSI is a holding company that does not directly own the legal entities doing business as the Facilities. (*Id.*, ¶¶ 2-20). Between two and eight distinct legal entities exist in the ownership chain between CHSI and each of the specifically-identified Facilities. (*Id.*, ¶¶ 3-20). Similarly, CHSI does not directly own

4

CHSPSC. There is one separate entity in the ownership chain between CHSI and CHSPSC. (*Id.*, ¶ 27).

CHSI does not transact business in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia, is not registered to do business in these states, has not appointed an agent for service of process in these states, has no office or place of business in these states, owns no real property in these states, and has no clients or employees in these states. (*Id.*, ¶ 36).

CHSI does not in any way control the day-to-day operations of the Facilities or CHSPSC. (*Id.*, ¶¶ 28-29). For instance, CHSI does not control or otherwise participate in any way in data operations at the Facilities or CHSPSC. (*Id.*, ¶ 30). CHSI does not control or otherwise participate in any way in collecting or maintaining possession, custody, or control of personal information of patients who receive medical care at the Facilities. (*Id.*). CHSI never possessed any personal information of any patients referenced in the Complaint and never participated in any way in any transmission of their personal information. (*Id.*). Likewise, CHSI did not enter into an agreement or contract with any of the Plaintiffs for the provision of medical services or for the protection or security of their personal information. (*Id.*, ¶ 35). CHSI did not receive any money from Plaintiffs identified in the Complaint. (*Id.*). Likewise, CHSI does not communicate with patients of the Facilities regarding patient records. (*Id.*).

# III.   ARGUMENT AND AUTHORITIES

## A.   The Courts in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, and West Virginia lack personal jurisdiction over CHSI.[3]

### 1.   These courts cannot exercise personal jurisdiction over CHSI.

The traditional minimum contacts jurisdictional analysis applies to this Court's consideration of whether it may constitutionally exercise jurisdiction over CHSI in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009)*; Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998); *F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F. Supp. 2d 961, 966 (N.D. Ind. 1999); *Rabiroads v. DFK Leasing Co.*, 68 F. Supp. 2d 850, 852 (N.D. Ohio 1999); *Easterling v. Am. Optical Corp.*, 529 S.E.2d 588, 594-95 (W. Va. 2000); *Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012); *In re Marriage of Yocum*, 870 P.2d 1033, 1035 (Wash. App. Ct. 1994); *Weisler v. Cmty. Health Sys., Inc.*, No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *3 (D.N.M. Sept. 27,

---

[3] This Court, i.e. the transferee court, possesses the powers of each transferor court and, thus, it analyzes whether a particular defendant is subject to personal jurisdiction where each case was originally filed. *See In re Trade Partners, Inc., Investors Litig.*, 532 F. Supp. 2d 904, 907-08 (W.D. Mich. 2007) ("'[T]he transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer,'" including matters related to personal jurisdiction.) (quoting *In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 163 (2d Cir. 1987)); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 657 n.2 (E.D. La. 2011) (same); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2:11-MD-2226-DCR, 2012 WL 767597, at **1-3 (E.D. Ky. Mar. 8, 2012) (same).

2012); *Estate of Ainsworth v. Boutwell*, 776 F. Supp. 2d 227, 229-30 (S.D. Miss. 2011).

In determining whether to exercise personal jurisdiction over a non-resident defendant, these courts apply the familiar constitutional standards developed by the United States Supreme Court of showing either general or specific jurisdiction. *See id*. Plaintiffs cannot meet their burden under either of these standards, and the Court, therefore, should dismiss CHSI for lack of personal jurisdiction in the cases arising out of any state other than Tennessee.

### a. These courts lack general personal jurisdiction over CHSI.

CHSI's indirect ownership interests in the Facilities do not subject it to general personal jurisdiction. A parent-subsidiary relationship does not constitute "continuous and systematic" contacts sufficient to satisfy due process. *See Ex parte British Steel Corp.*, 426 So. 2d 409, 412 (Ala. 1982) ("[I]t is the rule that the parent's use of the subsidiary in the forum does not necessarily subject the parent to the jurisdiction [of the forum]. . . .") (citation and quotation omitted); *Perry v. Household Retail Servs.*, 953 F. Supp. 1378, 1380 (M.D. Ala. 1996) ("It is well established that a parent corporation…is not subject to suit in a state simply because one of its subsidiaries is located within that state."); *Strickland v. Champion Enters., Inc.*, No. 1:06-CV-682-TFM, 2007 WL 1837136, at *4 (M.D. Ala. June 26, 2007) ("The mere fact that one corporation owns all the stock of

another corporation does not destroy the separate corporate identities."); *Thompson v. Taracorp, Inc.*, 684 So. 2d 152, 158 (Ala. Civ. App. 1996). Only if the parent so controls the subsidiary that the acts of the subsidiary should be attributed to the parent is this relationship relevant for determining personal jurisdiction. *Thompson*, 684 So.2d at 158; *see also Perry*, 953 F. Supp. at 1380 ("Absent some additional theory like alter ego, a parent corporation is not automatically subject to personal jurisdiction.").[4]

In fact, in *Ex parte Unitrin*, the Alabama Supreme Court examined these issues and declined to exercise general jurisdiction over a parent corporation based on the acts of its subsidiary. 920 So. 2d 557 (Ala. 2005). In its motion to dismiss in that case, the parent company filed an affidavit from its vice president stating that: the parent was a Delaware corporation headquartered in Illinois; the parent was not qualified to do business in Alabama and did not do business in Alabama; the parent was a holding company whose only active business was holding stock in subsidiaries; the parent did not own real property in Alabama; the parent did not maintain an office in Alabama and did not have any employees in Alabama; and

---

[4] *See also Weisler v. Cmty. Health Sys., Inc.,* No. CIV. 12-0079 MV/CG, 2012 WL 4498919, at *11 (D.N.M. Sept. 27, 2012); *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.3d 1297, 1299 (9th Cir. 1985); *Williams v. Canadian Fishing Co., Ltd.*, 8 Wash. App. 765, 768 (1973); *Susko v. Cox Enters., Inc.*, No. CIV.A. 5:07CV144, 2008 WL 4279673, at **7-8 (N.D. W. Va. Sept. 16, 2008); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1146 (Fla. Dist. Ct. App. 2007); *Lucas v. Gulf & Western Indus., Inc.,* 666 F.2d 800, 805–06 (3d Cir. 1981); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003); *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir. 1983); *Gammill v. Lincoln Life & Annuity Distribs., Inc.*, 200 F. Supp. 2d 632, 635 (S.D. Miss. 2001); *Russell v. Indianola Health & Rehab. Ctr.*, No. CIV A 406CV168-P-B, 2007 WL 1746397, at *2 (N.D. Miss. June 15, 2007).

the subsidiary was a corporation separate from the parent with its own assets, directors, officers, and employees. *Id*. at 559-60. In reversing the trial court's denial of the parent's motion to dismiss, the Supreme Court held that "[d]oing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation." *Id*. at 561.

Likewise, in *City of Irondale v. Community Health Systems, Inc., et al.*,[5] a decision from the Circuit Court of Jefferson County, Alabama, Judge G. William Noble granted CHSI's motion to dismiss for lack of personal jurisdiction and cited *Ex parte Unitrin* in holding that "doing business through a wholly owned subsidiary does not, in and of itself, constitute doing business by the parent corporation." Judge Noble later held that the plaintiff failed to meet its burden of proof in the face of CHSI's showing of a lack of personal jurisdiction through an affidavit by Ben C. Fordham – an affidavit similar to the attached declaration.

Further, in several recent medical malpractice cases involving claims against CHSI based on its remote ownership interest in New Mexico hospitals, New Mexico courts have granted CHSI's motion to dismiss for lack of personal jurisdiction. For example, in *Weisler*,[6] Judge Martha Vazquez held that "[t]he evidence does not support any basis for finding that Defendants were essentially 'at home' in New Mexico."

---

[5] A copy of the *City of Irondale* decision is attached as Exhibit B.
[6] A copy of the *Weisler* decision is attached as Exhibit C.

Moreover, in *Ellsworth, et al. v. Lea Regional Hospital, L.L.C., et al.*, No. 12-CV-59 (D. N.M. June 7, 2012),[7] Judge William P. Johnson held that the plaintiffs had not "controvert[ed] Defendant CHSI's original contention: that it is a holding company with no employees, no operational control over hospitals, and no contacts with New Mexico." Likewise, in *Cummings v. Leatherwood, et al.*, No. CIV-12-0081 (D. N.M. Sept. 5, 2012),[8] Judge Robert C. Brack dismissed CHSI for lack of personal jurisdiction because "[t]he record before the Court demonstrates that CHSI has no presence in New Mexico. CHSI neither operates the Hospital, nor makes clinical decisions regarding patients . . . CHSI is a nonresident holding company with no minimum contacts with New Mexico." *See also Sizelove v. Woodward Reg'l*, No. CIV-11-0230-HE, 2011 WL 5087997, at *2 (W.D. Okla. Oct. 25, 2011) ("CHSI clearly is a holding or parent company of the Hospital, but not its direct owner. Plaintiff has not...demonstrated that that relationship, alone, is sufficient to provide the court with jurisdiction over CHSI."); *Stewart v. Ruston Louisiana Hosp. Co., LLC, et al.*, No. 14-00083 (W.D. La. May 2, 2014) (dismissing CHSI for lack of personal jurisdiction).[9]

---

[7] A copy of the *Ellsworth* decision is attached as Exhibit D.
[8] A copy of the *Cummings* decision is attached as Exhibit E.
[9] A copy of the *Stewart* decision is attached as Exhibit F.

Numerous other courts around the country have reviewed CHSI's parent/subsidiary relationship with its affiliated hospitals and likewise dismissed cases against CHSI for lack of personal jurisdiction.[10]

The jurisdictional question at issue in those cases is essentially identical to the one at issue in this case. As each of those courts recognized, CHSI has carefully maintained its corporate separateness from the Facilities. CHSI's only relationship with the Facilities is as a remote parent company. (*See* Fordham Decl., ¶¶ 2-20). CHSI has no offices, employees or agents in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia. (*Id*., ¶ 36). In fact, CHSI does not advertise, market or offer services for sale in any of these nine states. (*Id*.). CHSI, likewise, does not operate CHSPSC and does not control the day-to-day operations of CHSPSC. (*Id*., ¶ 29). To assert personal jurisdiction over CHSI simply because it has an indirect ownership interest in the Facilities and CHSPSC would offend even the outer limits of due process.

Further, Plaintiffs quote from certain SEC filings, statements to stockholders, or statements on www.chs.net in an attempt to blur the corporate separateness of CHSI, its affiliates and subsidiary medical facilities. (*See* Compl., ¶¶ 54-56, 89, 105-07). The statements Plaintiffs reference are taken out of context, however, and ignore the Legal Notice that applies to CHSI's SEC filings and

---

[10] Decisions from Arizona, California, North Carolina, Pennsylvania, South Carolina, Texas, and Washington are attached as Collective Exhibit G.

appears on www.chs.net, which makes clear that the individual hospital companies are responsible for the operations of the hospital, not CHSI:

> Community Health Systems, Inc. is a holding company and does not engage in any business other than those activities associated with being a publicly traded stock company, such as, listing agreements with the New York Stock Exchange ("NYSE") and registration and compliance with the U.S. Securities and Exchange Commission ("SEC") . . . Each hospital affiliated with Community Health Systems, Inc. and CHSPSC, LLC is owned (or leased) and operated by a separate and distinct legal entity.

A copy of the "Legal Information" from www.chs.net with these statements is Exhibit 1 to Ben Fordham's Declaration.[11] The Legal Information makes clear that each hospital affiliated with CHSI is a separate and distinct entity responsible for its own day-to-day operations.  It further explains that CHSI is required to adhere to the SEC's "plain English" principle and avoid legal jargon. CHSI adheres to these rules by referring to it and its subsidiaries in a consolidated fashion.[12]

Such references do **not** constitute minimum contacts in a personal jurisdiction analysis nor do they change the actual legal structure of CHSI and its affiliates. In fact, in *Weisler*, the court addressed this same issue and held that:

> To the extent that Plaintiff argues that the website, although owned and operated by [CHSPSC], nonetheless binds Defendant CHSI

---

[11] CHSI's 10-K, available at www.chs.net, contains similar language.  *See* Fordham Decl. ¶ 42, Exh. 2.

[12] One purpose of the Plain English rule is to "lead to a better informed securities market – a market in which investors can more easily understand the disclosure required by the federal securities laws." S.E.C. Release No. 1113 (Jan. 29, 1998). CHSI has over 700 subsidiaries. If CHSI were to describe its consolidated operations using legal descriptions of the corporate relationships of each of these subsidiaries, its public documents would become incredibly voluminous and virtually indecipherable and inapposite to SEC requirements and guidance.

through the use of inclusive language such as "we," "us," "our," and "the Company," this argument is unavailing. The "Legal Notice" on the website specifically notifies viewers that the site uses inclusory language to comply with SEC and NYSE requirements of "plain English" and that these statements are not intended to bind CHSI or imply that the actions of one legal entity can be attributed to another. Furthermore, general references by a parent corporation to the business of a subsidiary as being part of the business of the parent does not confer personal jurisdiction or serve to erase the substantive and legal distinctions between corporations.

*See* Ex. C. Likewise, *Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955 (N.D. Cal. May 20, 2008) is a similar case in which the court refused to find jurisdiction despite the fact that the parent company referenced the subsidiary in SEC filings and its website. The court noted that, while the parent stated in its SEC filings that "we employed approximately 30,200 employees," "we hire," and "our employees" when referencing employees of its subsidiaries, it also stated that "[t]he terms 'the company,' 'we' and 'us' and 'our' refer to [the subsidiary], and, where applicable, our consolidated subsidiaries." The Court noted that the parent's "statements to the SEC are merely inclusive statements that contend that [the subsidiary's] employees are its own employees. This is a common business practice, and as the sole owner of [the subsidiary], [the parent] may make generic statements about [the subsidiary's] employees and the operation of [the subsidiary]." *Id.* at **2, 4.

### b. These courts lack specific jurisdiction over CHSI.

To support the exercise of specific jurisdiction over CHSI, Plaintiffs must show that (1) CHSI had the requisite minimum contacts with Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia, (2) that the cause of action arises out of those minimum contacts, and (3) that the exercise of jurisdiction would be reasonable and fair. *See, e.g., J.C. Duke & Assocs. v. West*, 991 So. 2d 194, 197-98 (Ala. 2008); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)). As set forth below, Plaintiffs cannot satisfy any of these elements, much less all three.

### i. CHSI does not have minimum contacts with these nine states.

First and foremost, CHSI has no minimum contacts with Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia, much less contacts giving rise to Plaintiffs' claims. "A court has specific jurisdiction when a defendant has had few contacts with the forum state, but those contacts gave rise to the lawsuit." *Leventhal v. Harrelson*, 723 So. 2d 566, 569 (Ala. 1998). The minimum-contacts analysis focuses on the defendant's contacts with the forum state and whether the defendant "has purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Vista Land & Equip., L.L.C. v. Computer Programs & Sys.*, 953 So. 2d 1170, 1175 (Ala. 2006). The "purposeful availment"

requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Ex parte Ga. Farm Bureau Mut. Auto. Ins. Co.*, 889 So. 2d 545, 551 (Ala. 2004).[13]

Plaintiffs here cannot demonstrate that CHSI has sufficient contacts with Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, or West Virginia to support the exercise of specific jurisdiction because CHSI does not transact business in these states and has not otherwise directed its activities to residents of these states. CHSI is not even qualified to do business in these states. (Fordham Decl., ¶ 36). It has no office or place of business in these states, and has no employees in these states. (*Id.*). CHSI does not control the day-to-day affairs of the Facilities or CHSPSC. (*Id.*, ¶¶ 28-29). Accordingly, CHSI has not purposefully availed itself of the privilege of conducting activities in these states and could not reasonably anticipate being haled to these fora. Plaintiffs cannot satisfy the first prong of the specific jurisdiction analysis and CHSI is due to be dismissed.

> ### ii. There is no relationship among CHSI, these nine states, and Plaintiffs' claims.

Plaintiffs also cannot satisfy the second element, which focuses on "the relationship among the defendant, the forum, and the litigation." *Wenger Tree*

---

[13] For ease of reference, CHSI has cited Alabama law, although the law in the other eight states is the same. *See, e.g.*, *Willow Creek Exploration LTD. v. Tadlock Pipe & Equip., Inc.*, 186 F. Supp. 2d 675, 680-81 (S.D. Miss. 2002); *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498-99 (5th Cir. 2012); *Cronin v. Sierra Med. Ctr.*, 129 N.M. 521, 527 (N.M. Ct. App. 2000); *Sanchez v. Church of Scientology*, 115 N.M. 660, 664 (N.M. 1993).

*Serv. v. Royal Truck & Equip., Inc.*, 853 So. 2d 888, 895 (Ala. 2002). Plaintiffs'

claims do not relate to any local activities on the part of CHSI, as CHSI has not

engaged in any local activities. CHSI's role as a remote corporate shareholder

certainly has nothing to do with Plaintiffs' causes of action.

CHSI is an indirect shareholder of the Facilities and CHSPSC. (Fordham

Decl., ¶¶ 3-20, 27). It does not operate the Facilities or CHSPSC or otherwise

control the Facilities' or CHSPSC's day-to-day operations. (*Id.*, ¶¶ 28-29). CHSI

does not control or otherwise participate in any way in data operations at the

Facilities or CHSPSC. (*Id.*, ¶ 30). CHSI never possessed any personal information

of any patients referenced in the Complaint and never participated in any way in

any transmission of their personal information. (*Id.*). CHSI did not enter into an

agreement or contract with any of the Plaintiffs identified in the Complaint for the

provision of medical services or otherwise. (*Id.*, ¶ 35). Nor did CHSI receive

money from any of the Plaintiffs in this litigation. (*Id.*). Likewise, CHSI does not

communicate with patients of its affiliated hospitals regarding patient records.

(*Id.*). There is no connection between Plaintiffs' causes of action and CHSI's role

as an indirect shareholder of the Facilities and CHSPSC.

### c. Asserting jurisdiction over CHSI would be neither reasonable nor fair.

Both general and specific personal jurisdiction require a showing that the

exercise of jurisdiction would be reasonable, *i.e.*, it would not offend traditional

notions of fair play and substantial justice. *Vista Land & Equip., L.L.C. v. Computer Programs & Sys.*, 953 So. 2d 1170, 1175 (Ala. 2006). In this analysis, the court must consider the following factors: the burden on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Ex parte DBI, Inc.*, 23 So. 3d 635, 650 (Ala. 2009).

Courts in Alabama, Florida, Indiana, Mississippi, New Mexico, Ohio, Pennsylvania, Washington, and West Virginia, respectively, have no legitimate interest in exercising jurisdiction over CHSI. CHSI does not transact business in these states or otherwise engage in any activities forming the basis of this lawsuit. (Fordham Decl., ¶¶ 28, 36). Further, the duration of CHSI's activity within these states is irrelevant, since its only activity is as a remote parent company. Such activity is insufficient as a matter of law to confer jurisdiction. *See Ex parte Unitrin, Inc.*, 920 So. 2d 557, 561 (Ala. 2005).

As such, for the foregoing reasons, the Court should dismiss CHSI for lack of personal jurisdiction in the fourteen non-Tennessee cases.

**B.     This Court lacks subject matter jurisdiction over CHSI.**

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff, as proponent of subject matter jurisdiction, bears the burden of

persuasion. *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328 (11th Cir. 2006); *Eternal Word Television Network, Inc. v. Sebelius*, 935 F. Supp. 2d 1196, 1209 (N.D. Ala. 2013). A "factual attack," on subject matter jurisdiction – as opposed to a "facial attack" which confines itself to the pleadings – challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-31 (11th Cir. 1990).

To establish standing, Plaintiffs must demonstrate, among other things, that there is a "causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Ala. Legislative Black Caucus v. Ala.*, 988 F. Supp. 2d 1285, 1297, 1300 (M.D. Ala. 2013) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

As a matter of law, Plaintiffs cannot establish this element of the standing test because CHSI never possessed any personal information of Plaintiffs. In *Polanco v. Omnicell, Inc.* – a data theft case similar to the one at issue – the court held that, because a particular defendant never possessed the plaintiff's protected health information, the plaintiff could not show an injury traceable to that defendant's conduct, and as a result the plaintiff lacked standing to sue the defendant. 988 F. Supp. 2d 451, 465 (D.N.J. 2013).

As stated in the Fordham Declaration, CHSI never possessed any personal information of any patients referenced in the Complaint and never participated in any way in any transmission of their personal information. (Fordham Decl., ¶ 30). The wrongdoing alleged in this lawsuit is related to the allegedly improper collection, handling, and storage of personal patient information. Because CHSI never possessed or transmitted the personal information at issue, there is no causal connection between Plaintiffs' alleged injury and any of CHSI's conduct. As such, Plaintiffs have no standing to bring any action against CHSI.

## C. Plaintiffs failed to state a claim against CHSI.

### 1. Standard of review

In order to state a valid cause of action, the complaint must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint must include sufficient "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Allegations that are "no more than conclusions" are "not entitled to the assumption of truth" and "naked assertions devoid of further factual enhancement" should be disregarded. *Id.* Although the complaint is construed in the light most favorable to the plaintiff, the court need not accept as true conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1253 (11th Cir. 2005).

Further, "group" pleadings constitute "conclusory allegations" that are not assumed true under Rule 12(b)(6). *See, e.g.*, *Black v. JP Morgan Chase & Co.*, No. CIV.A. 10-848, 2011 WL 4102802, at *3, n.5 (W.D. Pa. Aug. 10, 2011) *report and recommendation adopted*, No. 2:10CV848, 2011 WL 4089379 (W.D. Pa. Sept. 14, 2011). One court described this pleading tactic as such:

> [Plaintiff] continuously refers to "Defendants" without differentiating between which of the Defendants or categories of Defendants allegedly engaged in the specific conduct. It cannot be assumed that all of the Defendants engaged in all of the alleged conduct given that there are distinct differences in their businesses.

*Id.*; *see also McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 953-954 n.42 (M.D.N.C. 2011), *aff'd, in part, rev'd, in part, on other grounds, Evans v. Chalmers*, 703 F.3d 636, 643 (4th Cir. 2012) (holding that plaintiffs failed to state a claim and that "the burden is on Plaintiffs to state their claim and the factual basis for their claim as to individual Defendants and specific claims, and 'group claims'" based on undistinguished acts "do not provide sufficient notice or basis for a separate claim").[14]

---

[14] *See also Meek v. Torossian*, No. CIV-01-1459-F, 2002 WL 32026156, at **8-9 (W.D. Okla. Dec. 17, 2002) (holding that "group" or "shotgun" pleadings are deficient, "wreak havoc on the judicial system," and constitute a "recklessly inclusive approach to pleading [that] is inherently vexatious and inevitably 'multiplies the proceedings,'" while ignoring the "professional obligation" to "differentiate between multiple defendants when pleading multiple claims"); *In re Reichgott*, No. 12-31364, 2013 WL 5492532, at *5 (Bankr. N.D. Ohio Oct. 1, 2013) ("[B]y its use of the plural, 'Defendants,' this general allegation does not attempt to differentiate between the respective Defendants, suggesting that the same operative facts could establish liability for both of the Defendants.... On whole, therefore, the Plaintiff's averment, being conclusory in nature, cannot be construed as anything more than unsupported 'labels and conclusions' and 'naked assertions,' which do not pass muster under the *Twombly* and *Iqbal* standard for pleading."); *Gomez v. Dole Food Co.*, No. B228876, 2011 WL 5085007, at *15 (Cal. Ct. App.

## 2.      Plaintiffs have stated no well-pled allegations against CHSI.

Plaintiffs admit, first and foremost, that CHSI and CHSPSC are separate entities with completely different functions. (*See* Compl., ¶¶ 54, 58-59). According to Plaintiffs (although factually incorrect), CHSI is a "healthcare provider[]," while CHSPSC "provides management, consulting, and information technology services to hospitals and health systems...." (*Id.*). Plaintiffs, likewise, acknowledge that CHSI itself does not actually provide healthcare services to patients, but, instead, its "network of affiliated, physicians, hospitals, and clinics" do. (Compl., ¶¶ 1, 54). Despite these admitted facts, Plaintiffs treat CHSI, a holding company, CHSPSC, a company providing management and consulting services, and hundreds of affiliated companies as one entity.

Plaintiffs have not sued any of the legal entities that own and operate the medical facilities which, if Plaintiffs allegations are to be credited, provided medical care to Plaintiffs and collected their health information, even though Plaintiffs specifically refer to a number of the medical facilities in the Complaint. (*See id.*, ¶¶ 14-53). Instead, Plaintiffs sued CHSI and base their theory against CHSI on the conclusory allegation that the patients were "required" to provide information to CHSI. (*See, e.g., id.*, ¶¶ 14-18). Plaintiffs provide no specific detail

_____

Oct. 27, 2011) ("By using a collective term for both [defendants]...plaintiffs created an inherent ambiguity running throughout its factual allegations and rendering it all but impossible to distinguish the wrongful acts attributable to [one party] directly from those in which liability depends on proof of an agency or alter ego relationship.... [A] plaintiff is required to set forth the essential facts of his case with reasonable precision and with particularity sufficient to acquaint a defendant with the nature, source and extent of his cause of action.").

– or, in fact, any allegation whatsoever – as to what role CHSI allegedly played in the data-collection process, what process was in place to transfer information from various medical facilities to CHSI, what individuals at CHSI "required" Plaintiffs or various medical facilities to conduct this transfer, or, in fact, anything else related to how the information collected by the various medical facilities made its way to CHSI. (*See generally id.*).

Instead, throughout the Complaint, Plaintiffs simply refer to two separate entities, CHSI and CHSPSC, as "Defendants" and allege that the "Defendants" – without differentiation – committed a number of acts related to the alleged mishandling of patient information.  (*See, e.g.*, Compl., ¶¶ 93-97). Plaintiffs' "group pleading" tactic does not constitute fact pleading and is not assumed true under the Rule 12 standard, as discussed above. Under the circumstances, these conclusory allegations simply do not suffice to state a claim against CHSI.

Further, under Federal Rules of Evidence 106 and 201, this Court can consider the entirety of what appears on both www.chs.net and in CHSI's SEC filings in considering the plausibility of Plaintiffs' claims in this motion. *See* Fed. R. Evid. 106, 201; *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1275-81 (11th Cir. 1999) (noting the propriety of a Court's taking of judicial notice of SEC filings – even in a case, unlike this one, when those filings had not been specifically quoted in the complaint).

### 3. Plaintiffs have failed to state a claim for breach of contract (Count I) against CHSI.[15]

Plaintiffs allege that they "entered into contracts" with both CHSI and CHSPSC for the provision of healthcare services. (Compl., ¶ 130). And yet Plaintiffs do not identify in any way what type of contract is at issue; they do not attach copies of the contracts; and they quote no specific language from the alleged contracts. Instead, they generally allege that – in these alleged contracts between Plaintiffs and CHSI – CHSI "promised to comply with the requirements of HIPAA and to act reasonably to protect Plaintiffs and the proposed class members' confidential patient data." (*Id.*). Plaintiffs then allege that CHSI made explicit promises to Plaintiffs in these "contracts" and in "patients' rights and privacy notices." (*Id.*, ¶ 132).

As explained in CHSPSC's brief, such privacy notices do not constitute contracts as a matter of law. Furthermore, remote affiliates, such as Brandywine Hospital, published the notices, (*Id.*, ¶ 108), not CHSI.

Plaintiffs do not allege any other "contract" that could possibly exist between them and CHSI, a holding company with no employees, because, as Plaintiffs well know, no such contract exists. *See Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 Fed. App. 606, 608 (11th Cir. 2015) (quoting *Harris v. Am.*

---

[15] Rather than duplicating CHSPSC's arguments, CHSI has focused its 12(b)(6) briefing primarily on Tennessee law as (a) Plaintiffs contend that "applying Tennessee law to the common law claims of the National Class is appropriate," (Compl., ¶ 112); and (b) Tennessee is the only jurisdiction at issue where a transferor court may exercise personal jurisdiction over CHSI. CHSI incorporates CHSPSC's additional arguments by reference.

*Postal Workers Union,* 198 F.3d 245 (6th Cir. 1999)) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."). Plaintiffs' cause of action for breach of contract should be dismissed.

      **4.    Plaintiffs have failed to state a claim for breach of implied contract (Count II) against CHSI.**

Under Tennessee law, a contract implied in fact "arises under circumstances which show mutual intent or assent to contract." *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 905-06 (Tenn. Ct. App. 2009) (internal quotations omitted).

Here, Plaintiffs have provided absolutely no allegations regarding CHSI's alleged "conduct" – in fact, all allegations related to CHSI concern either (a) statements in SEC filings or on www.chs.net; or are based on (b) CHSI's role as an indirect parent of subsidiary hospital entities. (*See generally* Compl.).

Further, the "circumstances" appear to be simply that CHSI was an indirect parent company to a hospital that allegedly collected information from certain patients. From there, Plaintiffs apparently jump to the conclusory allegation that any patient who is treated at a medical facility automatically enters into an implied contract with a remote holding company of the medical facility. Such an allegation has no plausible basis and no support in any case law. The Court should dismiss Plaintiffs' claim for breach of an implied contract.

### 5. Plaintiffs have failed to state a claim for unjust enrichment (Count III) against CHSI.

First, Plaintiffs fail to plead that they conferred a benefit upon CHSI as a result of their alleged payments to affiliated medical facilities. Plaintiffs provide conclusory allegations that CHSI "received payment from Plaintiffs" and that CHSI "retained the benefits" of these alleged payments. (Compl. ¶¶ 147-49). Other than vague references to statements in SEC filings and on www.chs.net, Plaintiffs provide no factual support for these conclusions. Plaintiffs should be, in fact, well aware that CHSI received no payment from Plaintiffs as CHSI is simply a holding company. When coupled with Plaintiffs' admissions that they were treated at medical facilities that were affiliated with CHSI and, thus, were not treated at CHSI (*see* Compl., ¶¶ 1, 54), Plaintiffs' allegations are conclusory and implausible, and lack sufficient facts to draw any reasonable inference that CHSI received payment from Plaintiffs or retained the benefits of any payments from Plaintiffs. *See Pureworks, Inc. v. Brady Corp.*, No. 3:09–cv–983, 2010 WL 3724229, at **8-9 (M.D. Tenn. Sept. 15, 2010) (disregarding such bare legal conclusions in considering whether a party stated a claim for relief).

Second, Plaintiffs plead no allegation that would permit the Court to disregard the corporate form of hundreds of separate entities. It is only by disregarding each hospital's corporate form, along with any and all entities between the hospital where each plaintiff was actually treated, if at all, and CHSI,

the remote corporate parent, that CHSI can be brought (albeit improperly) into this lawsuit. And yet Plaintiffs have not pleaded that the corporate veil should be pierced,[16] much less any of the factors required for such an extraordinary finding. *See Elec. Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985); *Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790-91 (Tenn. 2006); *Cont'l Bankers Life Ins.*, 578 S.W.2d at 632; *Boles v. Nat'l Dev. Co., Inc.*, 175 S.W.3d 226, 245 (Tenn. Ct. App. 2005).

Third, any contract between Plaintiffs and the Facilities that treated them bar the unjust enrichment claim. *See Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001). To pursue an unjust enrichment claim against CHSI, Plaintiffs "must further demonstrate that he . . . has exhausted all remedies against the person with whom [he] enjoyed privity of contract." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). By suing the remote corporate parent of these medical facilities and not the medical facilities themselves, Plaintiffs have obviously not exhausted all available remedies. Plaintiffs' claim for unjust enrichment should be dismissed.

---

[16] This fact alone justifies dismissal. *See McDougal v. Edwards*, No. 95 C 5203, 1996 WL 385344, at *7 (N.D. Ill. July 2, 1996) ("An alter ego claim unsupported by any well-pleaded facts is not minimally viable."); *Med. Supply Chain, Inc. v. GE*, 144 Fed. App. 708, 713 (10th Cir. 2005) (dismissal affirmed because, among other reasons, plaintiff presented no factual allegations to support a conclusory allegation of alter ego"); *see also De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2nd Cir. 1996); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008); *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, at *8 (S.D.N.Y. Dec. 8, 2004).

**6.      Plaintiffs have failed to state a claim for negligence/negligence per se (Counts IV-V) against CHSI.**

First, the economic loss doctrine precludes any claims for negligence or negligence per se. "Courts addressing data breach cases have dismissed negligence claims based on the economic loss doctrine where the plaintiff has not suffered personal injury or property damage." *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013). Further, a Tennessee court has recently held that the economic loss doctrine can, indeed, apply to cases like this one. *See Ladd Landing, LLC v. Tennessee Valley Auth.*, 874 F. Supp. 2d 727, 731 (E.D. Tenn. 2012). The economic loss rule requires parties to live by their contracts rather than to pursue tort actions for purely economic losses arising out of the contract. *Broadnax v. Swift Transp. Co.*, 694 F. Supp. 2d 947, 953 (W.D. Tenn. 2010). Here, Plaintiffs have alleged a contract at issue, although the contract would be between the patient and the hospital at issue – not CHSI. As such, Plaintiffs cannot bring any action in tort but must instead seek their remedy in contract for their alleged economic losses.

Second, Plaintiffs cannot base their negligence per se claims upon HIPAA and the FTC Act because such statutes do not afford individuals a private right of action. *See Sheldon v. Kettering Health Network*, No. 26432, 2015 WL 4872999, at *8 (Ohio Ct. App. Aug. 14, 2015) ("[I]n our view utilization of HIPAA as an ordinary negligence 'standard of care' is tantamount to authorizing a prohibited

private right of action for violation of HIPAA itself...."); *Clark v. Nashville Gen. Hosp. at Meharry*, No. CIV. 3:14-1048, 2014 WL 2560505, at *1 (M.D. Tenn. June 6, 2014) *report and recommendation adopted*, No. CIV. 3:14-1048, 2014 WL 3722881 (M.D. Tenn. July 25, 2014); *Haun v. Don Mealy Imports, Inc.*, 285 F. Supp. 2d 1297, 1306-07 (M.D. Fla. 2003).

### 7. Plaintiffs have failed to state a claim for bailment (Count VI).

Plaintiffs' bailment claim fails because (1) Plaintiffs did not provide any personal information to CHSI, much less any tangible personal property, (2) with the expectation that CHSI return it. *See, e.g., Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 98 S.W.3d 159, 162-63 (Tenn. Ct. App. 2002); A. Darby Dickerson, *Bailor Beware: Limitations and Exclusions of Liability in Commercial Bailments*, 41 Vand. L. Rev. 129, 131 (1988) ("The bailment concept, however, is limited to tangible personal property and generally does not extend to either real or intangible property"); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) (dismissing bailment claim in data theft case).

### 8. Plaintiffs have failed to state a claim for willful or negligent violation of FCRA (Counts VII-VIII) against CHSI.

For the reasons discussed in more detail in CHSPSC's brief, Plaintiff's FCRA claims fail because (1) CHSI is not a "consumer reporting agency," but rather a holding company with no employees that never possessed Plaintiffs'

personal information, and (2) CHSI did not "furnish" any personal information to anyone, as the information was stolen.

### 9. Plaintiffs have failed to state a claim for violation of the Tennessee Identity Theft Deterrence Act of 1999 (Count X).[17]

Finally, Plaintiffs' claim under the Tennessee Identity Theft Deterrence Act of 1999 fails because, as noted above, CHSI is a holding company and, as such, never possessed Plaintiffs' information. (*See* Fordham Decl. at Ex. 1). Second, according to Plaintiffs, CHSI informed Plaintiffs of the data theft, and Plaintiffs allege no damages as a result of any purportedly untimely delay in notification. (*See* Compl., ¶¶ 6, 91-92); *Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) ("These injuries fail to constitute incremental harm suffered by Plaintiffs as a result of any delay.").[18]

## IV.   CONCLUSION

For these reasons, the Court should dismiss all claims against CHSI.

---

[17] Plaintiffs have not brought a claim under the Tennessee Consumer Protection Act. (*See* Compl. at Count IX). In regard to Count XI, wantonness is not a cause of action under Tennessee law. *See Payne v. Novartis Pharm. Corp.*, 967 F. Supp. 2d 1223, 1228 n.3 (E.D. Tenn. 2013) *rev'd and remanded on other grounds,* 767 F.3d 526 (6th Cir. 2014).

[18] Plaintiffs' argument that the notification was untimely ignores that it admittedly occurred within sixty days pursuant to HIPAA. *See* 45 C.F.R. § 164.404(b); (Compl. ¶¶ 79-80).

Respectfully submitted,

*/s/ John R Jacobson*

Wynn Shuford
Elizabeth Huntley
Jacob Tubbs
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama  35203
P: 205-581-0700
wshuford@lightfootlaw.com
ehuntley@lightfootlaw.com
jtubbs@lightfootlaw.com

John R. Jacobson
William M. Outhier
W. Russell Taber
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
P: 615-320-3700
jjacobson@rwjplc.com
wouthier@rwjplc.com
rtaber@rwjplc.com

*Attorneys for Defendant Community Health Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record on this 21st day of September, 2015.

*/s/ John R. Jacobson*