

FILED

2015 Oct-27  PM 05:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE COMMUNITY HEALTH SYSTEMS, INC., CUSTOMER DATA SECURITY BREACH LITIGATION<br><br>(MDL 2595) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Master File No.<br>15-CV-222-KOB<br><br>This Document Relates to:<br>All Actions<br><br>Judge Karon O. Bowdre |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO CHS, INC.'S MOTION TO DISMISS

497674.1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ....................................................................................... 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ............................................................................................. 3

  I.   STANDARD OF REVIEW ................................................................. 3

    A.  Rule 12(b)(2) ............................................................................ 3

    B.  Rule 12(b)(1) ............................................................................ 5

    C.  Rule 12(b)(6) ............................................................................ 6

  II.  PLAINTIFFS ESTABLISHED PERSONAL JURISDICTION OVER DEFENDANT CHSI ........................................................................ 7

    A.  This Court has Personal Jurisdiction over CHSI ........................ 7

    B.  Each Transferee Court Has Jurisdiction Over CHSI and it is Subject to Personal Jurisdiction and Liability Based Upon the Acts of its Agents .. 12

  III.  THE COURT SHOULD NOT DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION ................................................. 18

  IV.  PLAINTIFFS' CLAIMS SURVIVE AS A MATTER OF LAW ............... 21

    A.  Plaintiffs Adequately Allege the Existence of an Express Contract with CHSI ..................................................................................... 21

    B.  Plaintiffs Adequately Allege the Existence of an Implied Contract with CHSI ..................................................................................... 22

    C.  Plaintiffs Adequately Allege an Unjust Enrichment Claim ...................... 22

    D.  Plaintiffs Adequately Allege Negligence, Negligence *Per Se* and Wantonness Claims .................................................................... 25

      1. Negligence ............................................................................ 25

      2. Negligence *Per Se* .............................................................. 26

      3. Wantonness .......................................................................... 26

    E.  Plaintiffs Adequately Allege a Bailment Claim ........................ 27

    F.  Plaintiffs adequately alleged CHSI's willful or negligent violation of FCRA……………………………………………………………….....27

i

G.   Plaintiffs Adequately Allege a Claim Under Tennessee's Identity Theft Deterrence Act ("TITDA") of 1999 ……………………………………..29

   1.  Defendant erroneously contends that it never possessed Plainitffs' CPD ...................................................................................................29

   2.  Plaintiffs alleged damages as a result of untimely delay in notification ..30

CONCLUSION ........................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ARC LifeMed, Inc. v. AMC-Tennessee, Inc*., 183 S.W.3d 1 (Tenn. Ct. App. 2005)21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................6

*Bank of Nashville v. Chipman*, No. M2010-01581-COA-R3-CV, 2011 WL
    3433012 (Tenn. App. Ct. Aug. 5, 2011) ...................................................... 23, 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................6

*Berger & Montague, P.C. v. Scott & Scott, LLC*,153 F. Supp. 2d 750 (E.D. Pa.
    2001) ........................................................................................................................25

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ..........................................13

*Canal Indem. Co. v. Regency Club Owners Ass'n*, 924 F. Supp. 2d 1304 (M.D.
    Ala. 2013) ..............................................................................................................14

*Carmichael v. Kellogg, Brown, and Root Services, Inc.*, 572 F.3d 1271 (11th Cir.
    2009) ........................................................................................................................6

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) .....................18

*Clements v. LSI Title Agency, Inc.*, 779 F.3d 1269 (11th Cir. 2015).........................5

*Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir. 2000)
    ................................................................................................................................13

*Cook v. John Hancock Life Ins. Co. (U.S.A.)*, Civil Action No. 7:12-cv-00455,
    2015 WL 178108 (W.D. Va. Jan. 14, 2015) ......................................................20

*Corona v. Sony Pictures Entm't, Inc.,* No. 14-CV-09600, 2015 WL 3916744 (C.D.
    Cal. June 15, 2015)................................................................................................30

*Crowe v. Coleman,* 113 F.3d 1536 (11th Cir.1997) .................................................20

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) .........................................................8

*DeLong Equip. Co. v. Washington Mills Abrasive Co*., 840 F.2d 843 (11th Cir.
    1988)......................................................................................................................4, 5

*Drake v. Livesay*, 231 Va. 117 (1986) .....................................................................20

*Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727 (11th Cir. 1982) .............................18

*Ex parte Unitrin, Inc.*, 920 So. 2d 557 (Ala. 2005) .................................................17

*Expediters Intern. of Washington, Inc. v. Direct Line Cargo Mgt. Services, Inc.*, 995 F. Supp. 468 (D.N.J. 1998).........................................................................13

*Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298 (Ala. 1947)..............................14

*Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624 (11th Cir. 1994) .....................................................................4

*Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512 (Tenn. 2005) 23, 24, 25

*Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897 (2015) ............................................11

*Givens v. Mullikin ex rel. McElwaney*, 75 S.W.3d 383 (Tenn. 2002) .....................22

*Gunderson v. ADM Investor Services., Inc.*, 230 F.3d 1363 (8th Cir. 2000) ..........20

*Hammonds v. Aetna Cas. & Sur. Co.,* 243 F. Supp. 793 (N.D. Ohio 1965) ...........22

*Harmon v. Maury County, TN*, No. 1:05CV0026, 2005 WL 2133697 (M.D. Tenn. Aug. 31, 2005)......................................................................................................26

*Hazle v. Southern Pac. Co.*, 173 F. 431 (Tenn. 1909)............................................27

*Hirsch v. Bank of Am.*, 107 Cal.App.4th 708, 721 (2003).......................................24

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) .......................8

*In re Chinese Manufactured Drywall Products Liab. Litig.*, 767 F. Supp. 2d 649 (E.D. La. 2011) ...................................................................................................10

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 2:11-md-2226, 2012 WL 767597 (E.D. Ky. Mar. 8, 2012) .................................................................10

*In re Korean Air Lines Co., Ltd.*, 642 F.3d 685 (9th Cir. 2011)...............................7

*In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968).........................10

*In re Refrigerant Compressors Antitrust Litig. ("RCAL")*, 731 F.3d 586 (6th Cir. 2013) ........................................................................................................ 11, 12

*In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1157 (D. Minn. 2014) ....................................................................................................................30

*In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. 909 (S.D. Ohio 1997)................8

*In re Trade Partners, Inc., Investors Litig.* 532 F. Supp. 2d 904 (W.D. Mich. 2007) ....................................................................................................................10

*In re WellNX Mktg. & Sales Practices Litig.*, No. 07-md-1861, 2010 WL 3652457 (D. Mass. Sept. 15, 2010) ....................................................................................8

*In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262 (D. Minn. 1989)..............12

*Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756 (Tenn. 1994) ........................26

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................5

*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990)......................................................4

*Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264 (11th Cir. 2002).................. 5, 13, 14

*Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352 (Tenn. App. Ct. Jan. 27, 2004)................................................................................................27

*Nesbit v. Unisys Corp.*, 2:05-cv-528-F(WO), 2005 WL 1968828 (M.D. Ala. Aug. 10, 2005).............................................................................................................22

*Peterson v. Adams*, No. CV 113-116, 2013 WL 6092724 (S.D. Ga. Nov. 19, 2013) ......................................................................................................................4

*Pielage v. McConnell*, 516 F.3d 1282 (11th Cir. 2008) ...........................................6

*Reich v. Lopez*, 38 F. Supp. 3d 436, 462 (S.D.N.Y. 2014)......................................20

*Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012)..........................................5

*RMS Titanic, Inc. v. Kingsman Creatives, LTD.*, 579 Fed. Appx. 779 (11th Cir. 2014)..................................................................................................................18

*Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457 (2007) .................................................11

*S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292 (11th Cir. 2000)4, 14

*Schultheis v. Community Health Systems, Inc.*, 2012 WL 253366 (S.D. Ill. Jan. 26, 2012) ............................................................................................. 15, 16

*Shapiro v. Barnea*, Civil No. 06-811(JBS), 2006 WL 3780647 (D.N.J., Dec. 21, 2006) ....................................................................................................25

*Smith v. Triad of Alabama, LLC*, Case No. 1:14-cv-324-WKW, 2015 WL 5793318 (M.D. Ala. Sept. 29, 2015) ..................................................... 21, 22, 26

*Spitler v. Community Health Systems, Inc.*, 2015 WL 1775690 (S.D. Ill. Apr. 16, 2105) ............................................................................................ 15, 16

*Stagner v. Craig*, 19 S.W.2d 234 (Tenn. 1929) ......................................................27

*State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001) .............24

*Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006) ....................................................................................13

*Umoh v. Marks*, No. 09–cv–838, 2010 WL 2651939 (N.D.N.Y. June 25, 2010) . 20-21

*Waites v. Limestone Correctional Facility*, 14-cv-2181, 2015 WL 875431 (N.D. Ala. Mar. 2, 2015) .....................................................................................20

*Walk, Inc. v. Zimmer, Inc.*, No. 2:13-cv-01743-JEO, 2014 U.S. Dist. LEXIS 73735 (N.D. Ala. May 30, 2014)...................................................................15

*Walker v. Nations Bank of Fla.*, 53 F.3d 1548, 1554 (11th Cir.1995) ......................4

*Whitney Information Network, Inc. v. Xcentric Venture, LLC,* 2006 WL 2243041 (11th Cir. Aug.1, 2006) ..........................................................................5

**Statutes**

28 U.S.C. § 1407(a) .................................................................................................7

Tenn. Code § 47-18-2107(a)(2) ..............................................................................29

Tenn. Code § 47-18-2107(a)(3)(A)..........................................................................29

Tenn. Code § 47-18-2107(c)....................................................................................30

Tenn. Code §§ 47-18-2104-2106.............................................................................30

**Other Authorities**

Manual for Complex Litig. (4th Ed.) § 20.131 .......................................................10

## INTRODUCTION

Defendant CHS, Inc. ("CHSI" or "Defendant") is one of the largest, publicly traded hospital companies in the United States.  Through its subsidiary hospitals, who act as the agents of CHSI, it provides healthcare services to thousands of patients throughout the country.  As healthcare providers, CHSI and its agents accepted the responsibility to reasonably safeguard confidential patient data ("CPD") and to comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), 29 U.S.C. §§ 1181 *et seq.*

Throughout its Brief in support of its motion to dismiss (Doc. 68), CHSI, headquartered in Tennessee, contends it is not subject to personal jurisdiction in this MDL proceeding.  CHSI makes this claim despite the fact one of the lawsuits transferred to this Court by the Judicial Panel on Multidistrict Litigation, was filed in Tennessee – a forum CHSI acknowledges has jurisdiction over it.  (Doc. 68, p. 1, n.1).  All of the claims pleaded in the underlying Tennessee action are included in the Plaintiffs' Consolidated Amended Class Action Complaint ("CACAC") (Doc. 53).  What is more, CHSI's arguments regarding personal jurisdiction are contrary to decisions reached by MDL courts throughout the country.

Defendant's attack on the sufficiency of the claims pleaded in Plaintiffs' CACAC must also fail.  Plaintiffs' claims for breach of express and implied contract, unjust enrichment, negligence, negligence *per se*, wantonness, bailment,

willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), violations of state consumer laws and data breach notification statutes are legally cognizable and are supported by factual allegations sufficient to overcome CHSI's motion.   Respectfully, Defendant's motion to dismiss should be denied.

## STATEMENT OF FACTS[1]

CHSI, through a network of affiliated physicians, hospitals, and clinics, provides healthcare services to millions of individuals throughout the United States.  (Doc. 53, ¶ 1).  In providing those services, CHSI acted as a parent company with an agency relationship between CHSI, CHSPSC, LLC ("PSC"), and the affiliated facilities through which healthcare services were provided to Plaintiffs and the members of the Class.  Storage and protection of Plaintiffs' CPD was controlled by CHSI and PSC, as indicated in public filings by CHSI, CHSI's announcement of the breach, including the fact the announcement was made from a centralized CHSI source, CHSI's cyber insurance policy, and CHSI's public statements about the CHSI computer system.  (Doc. 53, ¶¶ 59; 89-90; 105-07).

CHSI made specific promises to Plaintiffs and Class Members regarding the privacy and protection of their CPD.  In fact, CHSI controls CHSPSC and its affiliated clinics through policy and business practices.  (Doc. 53, ¶ 54).  The

---

[1] Plaintiffs incorporate by reference the Statement of Facts contained in Plaintiffs' Response in Opposition to CHSPSC, LLC's Motion to Dismiss (Doc. 73), which briefly describes the mechanics of the Data Breach and Plaintiffs resultant injuries. *See* (Doc. 73, pp. at 2-4).

provisions of Defendant's Code of Conduct concerning the "Confidentiality of

Patient Information" provide that:

> When a patient enters a CHS affiliated facility, a large amount of
> personal, medical, and insurance data is collected and used to satisfy
> information needs including the ability to make decisions about a
> patient's care. We consider patient information highly confidential.
> Colleagues are expected to take care to protect the privacy of
> individually identifiable health information at all times.

*See* (Defendant's Code of Conduct, ¶ 10)[2]; *see also* (Doc. 53, ¶ 107).

In the "Statement of Beliefs" from its Code of Conduct, Defendant explicitly

acknowledges its duty to protect Plaintiffs' CPD:

> We have adopted the following Statement of Beliefs that summarizes
> the commitments of the organization's constituents to our patients,
> colleagues, physicians, and the communities served….**[W]e are
> dedicated to compliance with all federal, state, and local laws,
> rules, and regulations, including privacy and security of patient
> health information.**

(Doc. 53, ¶ 107) (quoting Defendant's Code of Conduct) (emphasis added).

Defendant's negligent failure to maintain reasonable and adequate security

procedures to protect against the theft of Plaintiffs' CPD placed Plaintiffs at an

increased and imminent risk of identity theft.

## ARGUMENT

## I.    STANDARD OF REVIEW

### A.    Rule 12(b)(2)

---

[2] Defendant's Code of Conduct can be found at:
http://www.chs.net/wp-content/uploads/2015/09/2015-Code-of-Conduct.pdf

Plaintiffs bear the burden of establishing personal jurisdiction over the non-resident defendant, CHSI. *See S & Davis Intern., Inc. v. The Republic of Yemen,* 218 F.3d 1292, 1303 (11th Cir. 2000).  Here, as discussed, *infra*, CHSI concedes jurisdiction in Tennessee, and United States Code, Title 28, Section 1407, transfers jurisdiction to this Court.  Defendant erroneously argues that personal jurisdiction must be established in each transferor Court.  If the Court determines it must evaluate personal jurisdiction in each transferor Court, the following standard applies.

When a court decides the issue of personal jurisdiction without conducting an evidentiary hearing, a plaintiff satisfies his or her burden by demonstrating a "prima facie case of jurisdiction." *Francosteel Corp., Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange,* 19 F.3d 624, 626 (11th Cir. 1994); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990).  A prima facie case exists when the plaintiff submits evidence sufficient to defeat a motion for judgment notwithstanding the verdict.  *See DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 840 F.2d 843, 845 (11th Cir. 1988).[3]

If the plaintiff's allegations are controverted by affidavits or testimony, "'the

---

[3] This standard is met if Plaintiffs present "'substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'" *Peterson v. Adams*, No. CV 113-116, 2013 WL 6092724, at *1 (S.D. Ga. Nov. 19, 2013) (quoting *Walker v. Nations Bank of Fla.*, 53 F.3d 1548, 1554 (11th Cir.1995)).

burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction . . . .'" *Whitney Information Network, Inc. v. Xcentric Venture, LLC,* 2006 WL 2243041, *3 (11th Cir. Aug.1, 2006) (quoting *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002)).  If conflicting evidence is submitted by the parties, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case.  *See DeLong,* 840 F.2d at 845.

### B.    <u>Rule 12(b)(1)</u>

Regarding CHSI's factual attack on subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Eleventh Circuit has explained that a plaintiff has standing when (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Moreover, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing.  Id. (quoting *Lujan*, 504 U.S. at 561); see also *Clements v. LSI Title Agency, Inc.*, 779 F.3d 1269, 1273 (11th Cir. 2015) (stating that plaintiff-appellant "did not need to prove her allegations at the pleading stage, and her 'general factual allegations of

injury resulting from the defendant[s'] conduct . . . suffice[d] to establish standing") (quoting *Resnick*).   As explained, *infra*, in Section III, Defendant's argument fails under this standard.

### C.    Rule 12(b)(6)

For Rule 12(b)(6) purposes, the Court must accept "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *see also Carmichael v. Kellogg, Brown, and Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).   Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim.  *Twombly*, 550 U.S. at 545.

## II.   PLAINTIFFS ESTABLISHED PERSONAL JURISDICTION OVER DEFENDANT CHSI

This Court has personal jurisdiction over CHSI to hear the claims presented in the CACAC.   CHSI's assertion that Plaintiffs must establish personal jurisdiction in each court where an action originally was filed (Doc. 68, pp. 1-2; 6-17) is incorrect because the CACAC is the only "legally operative" pleading.   Even if Plaintiffs are required to establish personal jurisdiction in each court where an action was originally filed, they have done so—each of the hospitals and other subsidiaries currently operating throughout the United States are agents of CHSI. As such, the contacts of each of CHSI's hospitals and subsidiaries are properly imputed to CHSI and subject CHSI to jurisdiction in each of the transferor courts.

### A.   This Court has Personal Jurisdiction over CHSI

United States Code, Title 28, Section 1407, authorizes the transfer of all "civil actions involving one or more common questions of fact…pending in different districts" (the "transferor courts"), to a single district court (the "transferee court") for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a).   A transferee judge exercising authority under a Section 1407 transfer "inherits the entire pretrial jurisdiction that the transferor district judge would have exercised if the transfer had not occurred."   *In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011).   Thus, as long as a single transferor court has personal jurisdiction over a defendant, the transferee court has personal

jurisdiction as well.  *See e.g.*, *In re WellNX Mktg. & Sales Practices Litig.*, No. 07-md-1861, 2010 WL 3652457, at *1 (D. Mass. Sept. 15, 2010) (finding that the transferee court had "jurisdiction over [the third-party New Jersey defendant] for all pretrial purposes" because one of the four transferor courts was based in New Jersey); *see also In re Telectronics Pacing Sys., Inc.*, 953 F. Supp. 909, 913 (S.D. Ohio 1997) ("In the context of cases consolidated for pretrial purposes under 28 U.S.C. § 1407, the court can exercise personal jurisdiction to the same extent as the transferor court could."); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987) (stating that 28 U.S.C. § 1407 authorizes "federal courts to exercise nationwide personal jurisdiction").

Here, the transferor court in Tennessee[4] has general personal jurisdiction over CHSI because CHSI is headquartered in Tennessee.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) ("With respect to a corporation, the…principle place of business [is sufficient]…for general jurisdiction.").  (*See also* Doc. 68, p. 1, n.1 (admitting Tennessee has jurisdiction over CHSI)).  Thus, if the transfer had not occurred, any plaintiff throughout the nation could have asserted claims against CHSI in the Tennessee transferor court and the Tennessee court would have had personal jurisdiction over CHSI with respect to such claims.

---

[4] Two cases were transferred from the U.S. District Court for the Middle District of Tennessee: *Murphy v. Cmty. Health Sys., Inc. et al.*, 2:15-cv-281 and *Ellzey et al. v. Cmty. Health Sys., Inc. et al.*, No. 3:15-cv-00832.

Because transfer has occurred, this Court, serving as the transferee, has inherited the jurisdiction of the Tennessee transferor court.  As a result, the Court has personal jurisdiction over CHSI to hear each claim brought in the CACAC.  For this reason, CHSI's motion must be denied.

Ignoring the foregoing, CHSI argues that the Court "should analyze whether [Defendant] is subject to personal jurisdiction where each case was originally filed." (Doc. 68, pp. 1-2; 6, n.3).  CHSI assumes the validity of this argument, devoting only a footnote in support.  (Doc. 68, p. 6, n.3).  In that footnote, Defendant correctly states that a "transferee court[] possesses the powers of each transferor court," but then jumps to the illogical conclusion that a transferee judge *must always* analyze "whether a particular defendant is subject to personal jurisdiction where each case was originally filed."  (Doc. 68, pp. 1-2; 6, n.3)[5]

Defendant's argument is misplaced because only the jurisdiction of this Court is at issue, as it relates to the CACAC.  First, "[a] transfer under section 1407 becomes effective when the order granting the transfer is filed in the office of the clerk of the transferee court. At that point, the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction."  Manual for Complex

---

[5] If the Court determines that it only has jurisdiction over CHSI for cases filed in Tennessee, Plaintiffs respectfully request that the Plaintiffs who did not file in Tennessee be dismissed without prejudice so that they may refile in Tennessee.

Litig. (4th Ed.) § 20.131; *see also In re Plumbing Fixture Cases*, 298 F. Supp. 484, 496 (J.P.M.L. 1968).

Second, Defendant's argument overlooks that the CACAC has been filed and it is now the only operative complaint in this MDL proceeding. Plaintiffs agree that CHSI's argument would be correct if the individual actions and their respective pleadings remained "legally operative." Indeed, this was the case in the three opinions Defendant cited in support of its argument. *See In re Trade Partners, Inc., Investors Litig.* 532 F. Supp. 2d 904, 906 (W.D. Mich. 2007) (analyzing the personal jurisdiction of each transferor court because a motion to dismiss for lack of personal jurisdiction "w[as] filed in each of the transferor courts prior to the multidistrict litigation [] transfer"); *In re Chinese Manufactured Drywall Products Liab. Litig.*, 767 F. Supp. 2d 649 (E.D. La. 2011) (analyzing the personal jurisdiction of each transferor court because a motion to dismiss for lack of personal jurisdiction was filed against the individual actions); *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 2:11-md-2226, 2012 WL 767597 (E.D. Ky. Mar. 8, 2012) (analyzing the personal jurisdiction of the transferor because individual plaintiffs filed separate complaints in the MDL transferee court, leaving each underlying complaint "operative"); *see also In re Darvocet, Darvon and Propoxyphene*, PACER Docket 2:11-md-2226 (E.D. Ky.) (detailing the numerous individual complaints filed by each MDL plaintiff).

Defendant's argument on this issue is incorrect because Plaintiff's CACAC supersedes all original complaints and has merged each individual action for the pendency of this MDL proceeding. *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 905 n.3 (2015) (stating that a master complaint "merg[es each] discrete action[] for the duration of the MDL pretrial proceedings," so long as it is meant to have legal effect); *see e.g., In re Refrigerant Compressors Antitrust Litig. ("RCAL")*, 731 F.3d 586 (6th Cir. 2013) (holding that a district court order dismissing all of the claims of six plaintiffs, but sustaining the claims of other plaintiffs, was not a final appealable order because the "legally operative" consolidated complaint had merged each individual action into a single consolidated case).[6]

Consequently, the relevant jurisdictional question concerns only the CACAC, not the individual state court pleadings. *See Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court

---

[6] Here, the CACAC is "legally operative."  The Sixth Circuit has stated that a consolidated complaint is "legally operative," and merges prior individual actions, when: 1) the master complaint, not the individual complaints, is served on the defendants; 2) the master complaint is used to calculate deadlines for the defendants to file their responses/answers; and 3) the master complaint is examined for its sufficiency when the defendants file a motion to dismiss. *RCAL*, 731 F.3d at 590. In this case, the CACAC was served on Defendant, (Doc. 54), it was used to calculate the Defendant's response/answer deadlines, (Doc. 64), and Defendant has chosen to examine the CACAC's sufficiency through its Motion to Dismiss. (Doc. 67). Moreover, the CACAC specifically was named "Consolidated Class Action Complaint," instead of "Administrative Class Action Complaint" or "Master Complaint" in an effort to signify its legal effect. *See RCAL*, 731 F.3d at 591 ("To ward off confusion, lawyers might do well to make plain what they have in mind. . .One option is to use 'administrative complaint'. . .for legally inert summaries of pleadings, and to use 'consolidated complaint'. . .for pleadings meant to have legal effect.").  As a result, the CACAC is "legally operative."

and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").[7]   As stated above, this Court has personal jurisdiction over CHSI where it has inherited the jurisdictional powers of the Tennessee transferor court.

The question of whether other transferor courts could exercise jurisdiction over CHSI does not arise, if at all, until individual cases are remanded to their original courts. *Cf. In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262, 265 n.3 (D. Minn. 1989) ("The court notes that it was possible for some defendants to concede personal jurisdiction in one transferor district, *and therefore in this district*, while contesting personal jurisdiction in another transferor district. The proper course of action in that event might well be for the court to defer disposition of a motion for partial dismissal until such time, if ever, that resolution of the motion was necessary.") (emphasis added).   As a result, CHSI's personal jurisdiction challenge should be rejected accordingly.

### B.   Each Transferee Court Has Jurisdiction Over CHSI and it is Subject to Personal Jurisdiction and Liability Based Upon the Acts of its Agents

---

[7] Although *Rockwell* dealt with subject matter jurisdiction, its holding is applicable here. *Rockwell* respects the general rule that "[a]n amended complaint supersedes an earlier complaint *for all purposes*." *RCAL*, 731 F.3d at 589 (emphasis added). "If combining claims in the initial complaint unifies them into a single action, combining claims in an amended complaint must unify them into a single action as well." *Id.* There is no reason these principles should not apply here.

In the alternative, the due process requirements for general personal jurisdiction "require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000), *cert. denied*, 534 U.S. 827 (2001). For specific personal jurisdiction, a defendant must "purposefully direct" its business activities at the citizens of the forum and the plaintiffs' injuries must result from these activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Although a parent corporation's ownership interest in a subsidiary is insufficient alone to establish "continuous and systematic" business contacts with, or "purposeful activity" directed at, a forum, a parent corporation may have such contacts where its subsidiary corporation is merely the parent's agent. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1361-63 (11th Cir. 2006); *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1273-74 (11th Cir. 2002).

"To hold a principal liable for the acts of its subsidiaries under general agency law, total domination over the subsidiary need not be proven." *Expediters Intern. of Washington, Inc. v. Direct Line Cargo Mgt. Services, Inc.*, 995 F. Supp. 468, 481 (D.N.J. 1998). An agency relationship exists between the principal and its subsidiary when:

> [T]he parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent

> has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors.

*S & Davis Int'l, Inc.*, 218 F.3d 1292, 1299 (11th Cir. 2000).

As the *Meier* court observed, "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or its separate corporate status is formal only and without any semblance of individual identity, then the subsidiary's business will be viewed as that of the parent and the latter will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction [over the parent]." *Meier ex rel. Meier*, 288 F.3d at 1272.

District Judge Mark Fuller explained specifically when a subsidiary corporation will be viewed as an agent of its parent corporation for the purpose of imputing personal jurisdiction on the parent company in *Canal Indem. Co. v. Regency Club Owners Ass'n*, 924 F. Supp. 2d 1304 (M.D. Ala. 2013). That Court held "under Alabama law, a 'separate corporate existence will not be recognized when a corporation is so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another…'" *Id.* at 1311 (quoting *Forest Hill Corp. v. Latter & Blum*, 29 So. 2d 298, 302 (Ala. 1947)); *See also Walk, Inc. v. Zimmer, Inc.*, No. 2:13-cv-01743-JEO, 2014 U.S. Dist. LEXIS

73735 (N.D. Ala. May 30, 2014) (although Walk, Inc. was unsuccessful in showing that Zimmer treated Accelero Health Partners, LLC as a "mere instrumentality," the court recognized the legal principle that there are scenarios in which a parent treats a subsidiary as a mere instrumentality or agent such that the subsidiary's activities in the forum state may be attributed to the parent, thereby permitting the forum state to exercise personal jurisdiction over the parent).

CHSI relies heavily upon decisions in medical-negligence actions in support of its argument each individual hospital operates independently of CHSI.  The present matter, however, is not a medical-negligence action and does not arise out of the rendering of medical services to patients.  Instead, Plaintiffs' claims arise out of the storing of their CPD, and CHSI's failure to protect their CPD from the Data Breach and to timely and properly notify them after discovery of the Breach.

Plaintiffs, patients at various CHSI subsidiary hospitals around the country, allege their CPD was stored by CHSI and PSC in a collective or single storage facility.  In *Schultheis v. Community Health Systems, Inc.*, 2012 WL 253366 (S.D. Ill. Jan. 26, 2012), and *Spitler v. Community Health Systems, Inc.*, 2015 WL 1775690 (S.D. Ill. Apr. 16, 2105), employees of two different CHSI-related hospitals sued CHSI alleging various employment-related claims.  In both cases, CHSI's Rule 12(b)(2) motions were denied.  The courts applied Illinois law which holds that "the jurisdictional contacts of a subsidiary corporation are not imputed

to the parent corporation" and that personal jurisdiction may be exercised over a parent "where a parent dominates the subsidiary" or "where the subsidiary is acting solely as the parent's agent, and the parent is simply doing business through its subsidiary to shield itself from liability." *Schultheis*, 2012 WL 253366 at \*2; *Spitler*, 2015 WL 1775690 at \*2. This is nearly identical to Alabama law.

In both cases, the court found "that there [was] sufficient evidence to establish a reasonable plausibility of a cause of action against CHS based on the control it exert[ed] over [the subject] hospital." *Spitler*, 2015 WL 1775690 at \*2. The courts determined that CHSI exercised substantial control over the hospital's employment practices and policies, including dictating compliance with standardized CHSI programs or practices. As to employment practices and policies, each hospital acted as CHSI's agent.

This case is analogous to *Schultheis* and *Spitler*. CHSI chose to control the storing and protecting of Plaintiffs' CPD in a collective fashion, as opposed to leaving it to each subsidiary hospital to store and protect personal information obtained or generated at that hospital. In other words, while subsidiary hospitals provided patient medical services, individually and separately from CHSI, the same is not true when it came to storing and protecting CPD.

While Plaintiffs, as mere patients at the various CHSI hospitals, are not privy to contracts or similar documents regarding CPD storage and protection, the

16

documents produced thus far by CHSI do support a finding of an agency relationship sufficient to establish personal jurisdiction.  For example, CHSI, in its Form 10K attached to its 2014 annual report, states:

> We [CHSI] rely extensively on our computer systems to manage clinical and financial data, communicate with our patients, payors, vendors and other third parties and summarize and analyze operating results.  We have made significant investments in technology to adopt and utilize [Electronic Health Records] and to become meaningful users of health information technology.  During the second quarter of 2014, our computer network was the target of an external, criminal cyber-attack in which the attacker successfully copied and transferred certain data outside the Company.

CHSI_0000049-50 (Community Health Systems Form 10-K Annual Report); *see also* CHSI_0000261 (using similar language to describe "Community Health Systems, Inc.['s]" "computer network"); (Doc. 53, ¶¶ 89; 105-07).  The phrasing in these two documents supports the plausibility of Plaintiffs' allegation that CHSI controls the storage and protection of CPD across PSC and facilities.  CHSI argues that it phrases its public filings inclusively in accordance with SEC practice.  (Doc. 68, pp. 12-13).  But given the announcement of the breach, the notification of customers from a centralized CHSI source, and the statements about the CHSI computer system, Plaintiffs plausibly allege that, at least for purposes of computer security and protection of CPD, PSC and facilities act as agents of CHSI.[8]

---

[8] *Ex parte Unitrin, Inc.*, 920 So. 2d 557 (Ala. 2005), is also inapposite.  Plaintiffs sufficiently allege that CHSI and PSC were materially involved data collection storage and collection services, unlike the claims in *Unitrin.*

Additionally, CHSI produced documents in discovery further providing evidence of its control over Plaintiffs' CPD. The documents referenced here have been labeled confidential, and are being filed under seal. See Exhibit "A" (Filed Under Seal). Because these documents are being Filed Under Seal, no specific reference to them is made herein. If CHSI did not have any control of "data operations at the Facilities or CHSPSC, LLC," these documents would not exist. *See* Exhibit A (Filed Under Seal). At this initial stage in this litigation, Plaintiffs have demonstrated the facts necessary to establish personal jurisdiction, or, at the very least, be entitled to conduct discovery as to CHSI's role in the storing and protecting of CPD and its role in timely reporting any data breach.[9]

## III.   THE COURT SHOULD NOT DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant argues that this Court "lacks subject matter jurisdiction over CHSI." (Doc. 68, p. 17). This argument fails as it is predicated on the false supposition that "[a]s a matter of law, Plaintiffs cannot establish [a causal connection between the injury and the conduct complained of] *because CHSI never*

---

[9] Federal Courts have the power to order jurisdictional discovery, and that power "is not entirely discretionary." *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729 (11th Cir. 1982). If "resolution of a pretrial motion [] turns on findings of fact – for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P 12(b)(6) – may require some limited discovery before a meaningful ruling can be made." *RMS Titanic, Inc. v. Kingsman Creatives, LTD.*, 579 Fed. Appx. 779, 790 (11th Cir. 2014) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). Federal Courts "should order limited jurisdictional discovery where the information that the plaintiff seeks, if it exists, would give rise to jurisdiction." *Id.* at 790.

*possessed any personal information of the Plaintiffs*." (Doc. 68, p. 18) (emphasis added). However, this is not the relevant question.

Defendant's "possession" of the CPD at issue is not an element of any of Plaintiffs' alleged causes of action. In other words, CHSI need not possess the CPD to be liable for damage resulting from exposure of that data. For example, under the breach of express and implied contract claims, Plaintiffs allege that CHSI promised to protect Plaintiffs' information. CHSI breached that promise by failing to ensure those entrusted with the CPD adequately protected it. (Doc. 53, ¶¶ 129-145). Possession of the CPD by CHSI is simply not a requirement of those claims. Accordingly, whether CHSI possessed the CPD is irrelevant to the Court's consideration of subject matter jurisdiction over those claims. Likewise, Plaintiffs' unjust enrichment, wantonness, negligence and negligence *per se* claims do not require CHSI to have "possessed" the CPD at any time. (Doc. 53, ¶¶ 146-181; 207-219). Plaintiffs establish the adequacy of their allegations in Section IV, *infra*. Therefore, the Court possesses subject matter jurisdiction over this action.

Moreover, even if possession of CPD were an element that Plaintiffs must demonstrate, CHSI completely ignores that it controlled and directed the acts of its agents who did possess the CPD. The issues of whether an agency relationship existed and the scope of any such relationship are heavily fact intensive and are generally questions of fact for a jury that should not be resolved on a motion to

dismiss. *See Gunderson v. ADM Investor Services., Inc.*, 230 F.3d 1363, *2 (8th Cir. 2000) (finding "[t]he existence of an agency relationship, nature and scope of the agent's authority, and whether the alleged acts were within the scope of the agent's authority, are ordinarily questions of fact") (unpublished disposition) and *Cook v. John Hancock Life Ins. Co. (U.S.A.)*, Civil Action No. 7:12-cv-00455, 2015 WL 178108, *6 (W.D. Va. Jan. 14, 2015) (quoting *Drake v. Livesay*, 231 Va. 117, 121 (1986) and stating "[u]nless the existence of an agency relationship depends upon unambiguous written documents, or undisputed facts, the question of agency *vel non* is one of fact for the jury" and "[a]gency may be inferred from the conduct of the parties and from the surrounding facts and circumstances"). Accordingly, the issues raised by CHSI are simply premature, and there is no basis to dismiss the Complaint for want of subject matter jurisdiction.[10]

---

[10] Defendant's argument that Plaintiffs' "group pleading" is impermissible and not assumed as true under Rule 12 is misplaced. (Doc. 68, pp. 21-22). As an initial matter, Defendant cites no authority supporting its argument that Plaintiffs have engaged in impermissible "group pleading," or that a "group pleading" standard even applies in this context. *See Waites v. Limestone Correctional Facility*, 14-cv-2181, 2015 WL 875431, at *4 (N.D. Ala. Mar. 2, 2015) (citing *Crowe v. Coleman,* 113 F.3d 1536, 1539 (11th Cir.1997)) ("[W]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."). Nevertheless, even if a "group pleading" standard is applicable, Plaintiffs have satisfied it. Plaintiffs allege that PSC was merely an agent of CHSI. As a result, PSC's actions are properly imputed to CHSI, and both entities appropriately are referred to in the singular. *See Reich v. Lopez*, 38 F. Supp. 3d 436, 462 (S.D.N.Y. 2014) ("The underlying premise of Plaintiffs' allegations is that D'Agostino is a de facto principal or agent of Derwick Associates who is heavily involved in its operations, regardless of whether he has an official title. As such, Plaintiffs' use of the collective term 'defendants' when discussing the state lawsuit is not a mistake or attempt to obfuscate, but an accurate indication of their claim that D'Agostino was directly involved in the matter even though he was not a named party."); *Umoh v. Marks*, No. 09–cv–838, 2010 WL 2651939, at *2

## IV. PLAINTIFFS' CLAIMS SURVIVE AS A MATTER OF LAW

### A. Plaintiffs Adequately Allege the Existence of an Express Contract with CHSI

CHSI argues that Plaintiffs' breach of express contract claim should be dismissed because "Plaintiffs do not identify in any way what type of contract is at issue; they do not attach copies of the contracts; and they quote no specific language from the alleged contracts." (Doc. 68, p. 23). A breach of contract claim requires Plaintiffs to plead: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach of the contract. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc*., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (citations and quotations omitted). Plaintiffs identified a written communication by Defendant which forms the basis of an enforceable contract between the parties – the Notice of Privacy Policies. (Doc. 53, ¶¶ 105; 130).

CHSI contends that a Notice of Privacy Policies does not constitute a contract. However, this issue cannot be decided on a motion to dismiss. *See Smith v. Triad of Alabama, LLC*, Case No. 1:14-cv-324-WKW, 2015 WL 5793318 at *14 (M.D. Ala. Sept. 29, 2015) (quoting *Nesbit v. Unisys Corp.*, 2:05-cv-528-F(WO),

n.2 (N.D.N.Y. June 25, 2010) ("While the proposed pleading frequently borders on impermissive 'group pleading,' the court is unable at this point to conclude that such allegations should be dismissed—particularly since there are only three defendants named, which Umoh alleges were acting either together or interchangeably.").

2005 WL 1968828, *2 (M.D. Ala. Aug. 10, 2005)).  Plaintiffs also alleged that

CHSI failed to perform its obligations under the parties' contract and that Plaintiffs

suffered damages as a result.   (Doc. 53, ¶¶ 134-137).   Accepting Plaintiffs'

allegations as true and construing them in the light most favorable to Plaintiffs, the

Court should not dismiss Plaintiffs' breach of express contract claim.

**B.**   **Plaintiffs Adequately Allege the Existence of an Implied Contract with CHSI**

As demonstrated by Plaintiffs in their response to PSC's motion to dismiss,

an implied contract exists between a doctor and a patient that requires the doctor to

maintain the confidentiality of the patient's information.  *See Givens v. Mullikin ex*

*rel. McElwaney*, 75 S.W.3d 383, 407-408 (Tenn. 2002) (citing *Hammonds v. Aetna*

*Cas. & Sur. Co.,* 243 F. Supp. 793, 801 (N.D. Ohio 1965)).  Plaintiffs outline the

facts and circumstances from which an implied contract arose between CHSI and

Plaintiffs.  (Doc. 53, ¶¶ 139-145).  As a result, CHSI's Motion to Dismiss the

breach of implied contract claim should be denied.  *See Triad of Alabama, LLC*,

2015 WL 5793318 at *15 (refusing to dismiss breach of implied contract claim on

same grounds as refusal to dismiss breach of express contract claim).

**C.**   **Plaintiffs Adequately Allege an Unjust Enrichment Claim**

Under Tennessee law, the following elements are required in order to

demonstrate unjust enrichment: 1) a benefit conferred upon the defendant by the

plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of

such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Bank of Nashville v. Chipman*, No. M2010-01581-COA-R3-CV, 2011 WL 3433012 at \*5 (Tenn. App. Ct. Aug. 5, 2011) (citing *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)) (quotations omitted).   Plaintiffs allege that CHSI failed to protect their CPD.   (Doc. 53, ¶¶ 10; 95; 102; 122; 148).   Plaintiffs further allege that a portion of their payments for services from CHSI's healthcare network and agents, constituted the relevant costs for CHSI to secure Plaintiffs' CPD. (Doc. 53, ¶¶ 1-3; 9-10; 74; 92; 110).

Contrary to CHSI's assertions, Plaintiffs allege their payments for services at CHSI's subsidiaries is a payment to CHSI for protection of their CPD as set out in the Notice of Privacy Practices (communicated to all patients) and Code of Conduct.  (Doc. 53, ¶¶ 105-107).

Additionally, CHSI, through its agent, PSC, stored Plaintiffs' data on behalf of its subsidiary clinics, hospitals, and doctor offices.   (Doc. 53, ¶¶ 88; 90). CHSI's Form 8-K SEC Filing explains "Community Health Systems, Inc. (the 'Company') confirmed that its computer network" was breached and that hackers obtained data that "was non-medical patient identification data **related to the Company's** physician practice operations and affected approximately 4.5 million individuals who, in the last five years, were referred for or received services from

physicians affiliated **with the Company**." (Doc. 53, ¶ 89) (emphasis added). These statements, contained in a regulatory filing, demonstrate that CHSI recoups a portion of Plaintiffs' payments to its subsidiary clinics, hospitals, and doctor offices in order to secure Plaintiffs' CPD on its own computer network.

Defendant wishes to divorce itself from these admissions made in its SEC filings and on its website, www.chs.net, by arguing a disputed fact beyond the four corners of Plaintiffs' CACAC. Namely, CHSI claims that "Plaintiffs should be, in fact, well aware that CHSI received no payment from Plaintiffs as CHSI is simply a holding company." (Doc. 68, p. 25). While Plaintiffs are not required to demonstrate that Defendant received its payment directly from them,[11] this type of factual assertion should not be considered at this preliminary stage. Instead, these types of self-serving facts illustrate precisely why CHSI's motion is premature and discovery should be allowed.

---

[11] In *Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 525 (Tenn. 2005), the Tennessee Supreme Court held:

> In accordance with this underlying principle, we conclude that to recover for unjust enrichment, a plaintiff need not establish that the defendant received a direct benefit from the plaintiff. Rather, a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust. Our conclusion is consistent with other jurisdictions that have also concluded that the benefit received by a defendant need not be direct to establish an unjust enrichment claim.

(citing *Hirsch v. Bank of Am*., 107 Cal.App.4th 708, 721 (2003) (holding the plaintiff need not pay the money directly to the defendant to confer a benefit) and *State ex rel. Palmer v. Unisys Corp*., 637 N.W.2d 142, 155 (Iowa 2001) (concluding that "benefits can be direct or indirect, and can involve benefits conferred by third parties")).

24

Where Plaintiffs allege that CHSI received payment from Plaintiffs to perform services that included protecting Plaintiffs' CPD and that CHSI retained the benefits of Plaintiffs' payments under circumstances which rendered it inequitable and unjust, Plaintiffs' unjust enrichment claim should not be dismissed.[12]

## D.   Plaintiffs Adequately Allege Negligence, Negligence *Per Se* and Wantonness Claims

### 1.   Negligence

CHSI's argument the economic loss doctrine applies to Plaintiffs' negligence claims is incorrect.   In support of its position, CHSI relies upon Plaintiff's allegations of the existence of a contract with CHSI.   However, CHSI repeatedly argues in its motion that Plaintiffs do not have any express or implied contract with CHSI.   *Shapiro v. Barnea*, Civil No. 06-811(JBS), 2006 WL 3780647, *6 (D.N.J., Dec. 21, 2006) ("It would be inappropriate to bar a claim for fraudulent performance pursuant to the economic loss doctrine when the viability of the contract claim is in dispute.").   Moreover, Plaintiffs are allowed to pursue alternative claims for relief at this stage of the proceeding.   *See Berger & Montague, P.C. v. Scott & Scott, LLC,* 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001)

---

[12] Tennessee law allows a plaintiff to pursue a defendant for unjust enrichment without having to exhaust all remedies against a party whom the plaintiff is in contract with.   *Freeman Indus., LLC*, 172 S.W.3d at 526 ("we conclude that to maintain an action for unjust enrichment, a plaintiff is not required to exhaust all remedies against the party with whom the plaintiff is in privity if the pursuit of the remedies would be futile."); *see also Chipman*, 2011 WL 3433012 at *5 (Tenn. App. Ct. Aug. 5, 2011),

(recognizing that Fed. R. Civ. P. 8(d)(2) permits pleading in the alternative, and therefore refusing to dismiss conversion claim under economic loss doctrine).

### 2.   Negligence *Per Se*

As set out more fully in Plaintiffs' opposition to PSC's motion to dismiss (Doc. 73, pp. 26-27), Tennessee courts recognize a cause of action for negligence *per se*. Additionally, many courts have concluded that a HIPAA violation may serve as the basis for a claim of negligence *per se*. *See, e.g., Harmon v. Maury County, TN*, No. 1:05CV0026, 2005 WL 2133697 at *3-4 (M.D. Tenn. Aug. 31, 2005) (remanding to state court a case asserting negligence *per se* based on a HIPAA violation, observing that "HIPAA's provisions do not completely preempt state law and expressly preserve state laws that are not inconsistent with its terms," and concluding that "Plaintiffs' claims fall within that broad class of state law claims based on federal regulations in the state court…. Thus, the Plaintiffs' motion to remand should be granted."); *Triad of Alabama, LLC*, 2015 WL 5793318 at *12-13 (refusing to dismiss the plaintiffs' negligence *per se* claim premised upon a HIPAA violation in a data theft class action).

### 3.   Wantonness

Plaintiffs also demonstrated in their response to PSC's motion to dismiss that Tennessee recognizes a claim for "gross or wanton negligence." (Doc. 73, p. 26); *See Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756, 757 (Tenn. 1994)

(quoting *Stagner v. Craig*, 19 S.W.2d 234, 236 (Tenn. 1929) and *Hazle v. Southern Pac. Co.*, 173 F. 431 (Tenn. 1909)); *see also Morgan v. State*, No. M2002-02496-COA-R3-CV, 2004 WL 170352 at *5 (Tenn. App. Ct. Jan. 27, 2004).  Given the dire warnings about the Heartbleed vulnerability, CHSI's failure to act or its indifference toward the vulnerability of Plaintiffs' CPD could be considered wanton conduct.  At a minimum, this issue should be the subject of discovery before the Court reaches a decision on the merits.

### E.   Plaintiffs Adequately Allege a Bailment Claim

Defendant's brief argument against Plaintiffs' bailment claim fails because it ignores the facts alleged in the CACAC and misinterprets the law.  As set out in Plaintiffs' opposition to PSC's motion to dismiss, CPD or (intangible personal property) is subject to a bailment, and an expectation of return is not required under Tennessee law.  (Doc. 73, p. 24).  Plaintiffs adequately alleged in the CACAC that they provided their CPD to CHSI and its subsidiary/agent health care providers.  (Doc. 53, ¶¶ 2; 74; 183-84).  Plaintiffs further allege that CHSI took possession of their CPD.  (Doc. 53, ¶ 184).  A bailment was established for the mutual benefit of the parties at the time of delivery and acceptance of Plaintiffs' CPD, and CHSI owed Plaintiffs a duty of reasonable care in safeguarding and protecting their CPD.  (Doc. 53, ¶¶ 183-186).

### F.   Plaintiffs adequately alleged CHSI's willful or negligent violation of FCRA

In their response to PSC's motion to dismiss, Plaintiffs outlined the reasons the Fair Credit Reporting Act ("FCRA") applies.  (Doc. 73, pp. 28-30).  For these same reasons, the FCRA applies to CHSI, and Plaintiffs sufficiently have alleged a willful or negligent violation of the FCRA by CHSI.

First, CHSI is a credit reporting agency ("CRA") as defined by the Act. Plaintiffs allege that CHSI used their credit reports to "extend credit for healthcare services, collect debt or determine eligibility for insurance."  (Doc. 53, ¶ 195). Plaintiffs allege that they "paid money to [CHSI] in exchange for [its] promise to provide healthcare services, including compliance with HIPAA and the industry standards for protecting confidential patient data", and "[a] portion of those monetary payments was made for the protection of confidential patient data." (Doc. 53, ¶¶ 10; 131).  At this stage, a determination regarding whether part of the fees paid by Plaintiffs went towards compiling Plaintiffs' consumer credit information is a question of fact that should considered by the Court only after discovery has been conducted.

Second, CHSI's argument that it did not "furnish" Plaintiffs' CPD should be rejected.  "Furnish" is not defined within the FCRA.  Plaintiffs allege that CHSI willfully, negligently or recklessly transmitted a "key" to the hackers and thus furnished Plaintiffs' CPD to these thieves.  Based upon these facts at this initial pleading stage, Plaintiffs' FCRA claim should not be dismissed.

**G.**   **Plaintiffs Adequately Allege a Claim Under Tennessee's Identity Theft Deterrence Act ("TITDA") of 1999**

    **1.**   **Defendant erroneously contends that it never possessed Plaintiffs' CPD**

Pursuant to § 47-18-2107(b) of the TITIDA:

> [a]ny information holder shall disclose any breach of the security of the system, following discovery or notification of the breach in the security of the data, to any resident of Tennessee whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subsection (d), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

CHSI clearly meets the definition of "information holder" as it admits to holding Plaintiffs' CPD.   (Doc. 53, ¶¶ 88-90); *See* Tenn. Code § 47-18-2107(a)(2) ("'Information holder' means any person or business that conducts business in this state, or any agency of the state of Tennessee or any of its political subdivisions, that owns or licenses computerized data that includes personal information.").[13] CHSI's unproven assertion that it is a holding company does not negate the fact that it is an information holder who possessed Plaintiffs' CPD.

---

[13] Furthermore, the CPD in Defendant's possession directly falls under the "personal information" covered under Tenn. Code § 47-18-2107(a)(3)(A) ("'Personal information' means an individual's first name or first initial and last name, in combination with any one (1) or more of the following data elements, when either the name or the data elements are not encrypted: (i) Social security number; (ii) Driver license number; or (iii) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account."). *See* (Doc. 53, ¶ 89) (acknowledging that "patient names, addresses, birthdates, telephone numbers and social security numbers" were included in the data breach).

### 2.   Plaintiffs alleged damages as a result of untimely delay in notification

Plaintiffs' CACAC plausibly alleges they suffered damages as a result of the CHSI's unreasonable delay in notifying them of the breach.  *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1157, 1171 (D. Minn. 2014); *see also* (Doc. 53, ¶¶ 223-224).   CHSI points to *Corona v. Sony Pictures Entm't, Inc.* to support its claim that delayed notification cannot proximately cause economic injuries.   No. 14-CV-09600, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015).   TITDA, however, required CHSI to **immediately** notify Plaintiffs "following discovery" of the data breach. Tenn. Code § 47-18-2107(c). CHSI failed to provide immediate notice in violation of the statute and the Tennessee Consumer Protection Act. *See* Tenn. Code §§ 47-18-2104 through 2106.[14]   Furthermore, Plaintiffs alleged a violation of the Tennessee Consumer Protection Act, by virtue of citing to the entirety of the Tennessee Identity Theft Deterrence Act.[15]

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that CHSI's Motion to Dismiss should be denied in its entirety.

---

[14] Despite intruders gaining access to CHSI's computer network in April 2014, Defendants did not confirm the data breach until July 2014 and did not notify Plaintiffs of the data breach until August 29, 2014.  (Doc. 53, ¶ 91).

[15] Doc 53, ¶ 226(h) (citing to the Tennessee Identity Theft Deterrence Act ***et seq.***, which thereby includes § 47-18-2106 "Violation of Tennessee Consumer Protection Act.").

Dated: October 27, 2015                    By:   /s/ Jeffrey E. Friedman

                                    **FRIEDMAN, DAZZIO, ZULANAS & BOWLING, P.C.**

                                    Jeffrey E. Friedman

                                    J. Michael Bowling

                                    Christopher J. Zulanas

                                    3800 Corporate Woods Drive

                                    Birmingham, AL 35242

                                    jfriedman@friedman-lawyers.com

                                    mbowling@friedman-lawyers.com

                                    czulanas@friedman-lawyers.com

                                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

                                    Karen Hanson Riebel

                                    Kate M. Baxter-Kauf

                                    100 Washington Ave. S., Suite 2200

                                    Minneapolis, MN 55401

                                    khriebel@locklaw.com

                                    kmbaxter-kauf@locklaw.com

                                    **Plaintiffs' Co-Lead Counsel**

                                    **PITTMAN, DUTTON & HELLUMS, P.C.**

                                    Christopher T. Hellums

                                    2001 Park Pl, #1100

                                    Birmingham, AL 35203

                                    chrish@pittmandutton.com

                                    **Plaintiffs' Liaison Counsel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing pleading with the

Clerk of the Court using the CM/ECF system which will send notification of such

filing to counsel of record on this 27th day of October, 2015.

/s/ Jeffrey E. Friedman
OF COUNSEL