
FILED
2018 Dec-10  PM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE:  COMMUNITY HEALTH | ) | |
| SYSTEMS, INC., | ) | |
| CUSTOMER SECURITY DATA | ) | |
| BREACH LITIGATION | ) | |
| (MDL 2595) | ) | |
| | ) | MASTER FILE NO. |
| | ) | 15-CV-222-KOB |
| | ) | |
| | ) | This document relates to all cases. |
| | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

I.      Preliminary Statement ........................................................................1

II.     Statement of Facts...............................................................................1

        A.      Factual Background and Procedural History ............................ 1

        B.      Terms of the Proposed Settlement.......................................... 3

        C.      Class Notice.............................................................................. 5

III.    Argument ..............................................................................................6

        A.      Legal Principles Governing Preliminary Approval ................... 6

        B.      Approval of the Proposal Under Rule 23(e)(2) ....................... 8

        C.      The Eleventh Circuit's Standards Governing Class Action Settlements
                ............................................................................................... 9

        D.      Conditional Certification of the Settlement Class Under Rule 23(b)(3)
                for Settlement Purposes Is Appropriate................................. 14

        E.      The Proposed Class Notice Is Adequate ................................ 21

IV.     Conclusion ........................................................................................23

## I.   PRELIMINARY STATEMENT

Plaintiffs, by and through the undersigned counsel, hereby move this Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement (a copy of the Settlement Agreement between the parties is attached hereto as Exhibit A); (2) certifying the proposed settlement class; and (3) approving the proposed notice program. Plaintiffs request that the motion, which Community Health Systems Professional Services Corporation does not oppose, be granted, because the settlement meets all of the standards for preliminary approval; the settlement class satisfies the requirements of Rule 23; and the notice program comports with both Rule 23 and due process.

## II.   STATEMENT OF FACTS

### A.   Factual Background and Procedural History

Defendants Community Health Systems Professional Services Corporation n/k/a CHSPSC, LLC and Community Health Systems, Inc., its indirect parent company, are affiliated with physician practices and clinics that provide healthcare services to millions of patients throughout the country.[1] During the relevant time period, CHSPSC maintained a centralized computer-based repository of confidential patient data for all of the patients who treat with and/or are referred to their vast

---

[1] The Settlement Agreement is between Plaintiffs and CHSPSC, but resolves all claims between all parties. *See* Ex. A at 4.  Where applicable, both Defendants are collectively referred to throughout at "CHS" or "Community Health Systems."

1

healthcare network. This data includes personally identifiable information such as names, addresses, birthdates, telephone numbers, Social Security numbers, employer names, and guarantor names, as well as protected health information. Plaintiffs alleged that in providing its services, CHS promised explicitly and implicitly that it would protect this confidential patient data.

In April 2014, hackers infiltrated CHSPSC's computer network, removing certain patient information (the "Security Incident"). As alleged by Plaintiffs, CHSPSC did not confirm the Security Incident until July 2014, and failed to even begin notifying Plaintiffs and the members of the proposed class of the breach until August 2014—which plaintiffs allege was in violation of HIPAA notification regulations and several state data breach notification statutes.

Following announcement of the cyberattack consumer plaintiffs filed several actions alleging that their highly sensitive confidential patient data was extracted by unknown third parties as a result of CHSPSC's failure to monitor its computer network. The cases were consolidated before this Court.

On July 20, 2015, Plaintiffs filed a consolidated amended class action complaint asserting on behalf of themselves and a national class claims for breach of express and implied contract, unjust enrichment, negligence, negligence *per se*, wantonness, bailment, willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), and violations of state consumer laws and data breach notification

statutes.  On September 21, 2015, CHS, Inc. and CHSPSC moved to dismiss the amended complaint. After hearing oral argument on February 10, 2016, the Court issued a final order on September 12, 2016, granting the motion in part and denying the motion in part. The Parties have since undergone two years of discovery and extensive settlement negotiations.

### B.    Terms of the Proposed Settlement

**The Settlement Class**

The proposed settlement class includes those who reside in the United States whose Personal Information was affected during the cyberattack on CHSPSC's computer network systems that was publicly announced on August 18, 2014.

"Personal Information" is defined as information that is or could be used, whether on its own or in combination with other information, to identify, locate or contact a person, including without limitation names, addresses, birthdates, social security numbers, telephone numbers, and the names of employers and/or guarantors.

The settlement will provide payments to people who submit valid claims. There are two types of payments that are available: (1) Response Expense Reimbursement and (2) Fraud Loss Reimbursement. Class Members may submit a claim for either or both types of payments. In order to claim each type of payment, Class Members must provide related documentation with the Claim Form. The

Claim Form includes examples of types of expenses Class Members may have incurred and how to document them.

Class Members are eligible to receive reimbursement of up to $250 (in total) for the following categories of out-of-pocket expenses resulting from the Security Incident:

- The costs of credit monitoring and identity theft protection services purchased by the Class Member between August 18, 2014 and [Month Day][2], 2019 (the Claims Deadline), with a statement by the Class Member that the monitoring or service was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase;

- Up to five hours of documented lost time spent dealing with the Security Incident or alleged identity fraud calculated at the rate of $15.00 per hour, but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form;

- The costs of credit report(s) purchased by the Class Member between August 18, 2014 and [Month Day][3], 2019 (the Claims Deadline), with a statement by the Class Member that the credit report(s) was purchased primarily because of the Security Incident; and

- Other incidental expenses attributable to the Security Incident, including, by way of example, payments for credit freezes, unreimbursed overdraft fees, unreimbursed charges related to unavailability of funds, unreimbursed late fees, long distance telephone charges; cell phone minutes (if charged by minute), Internet usage charges (if charged by the minute) and text messages (if charged by the message), where there is a statement by the Class Member that these

---

[2] The month and date of the Claims Deadline cannot be determined until the date certain for mailing notice is determined.  The date for mailing notice cannot be determined until the instant motion is granted.

[3] *See* Footnote 2.

incidental expenses were primarily incurred because of the Security Incident.

Class Members who had monetary out-of-pocket losses attributable to actual identity fraud and/or identity theft as a result of the Security Incident are eligible to make a claim for reimbursement of up to $5,000. As part of the claim, the Class Member must show that: (1) it is an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the Security Incident; (3) the loss occurred during the time period from August 18, 2014 through [Month Day][4] 2019; (4) the loss is not already covered by one or more of the categories in the claims related to response expense reimbursement described above; and (5) a reasonable effort was made to avoid or seek reimbursement for the loss (including exhaustion of all available credit monitoring insurance and identity theft insurance).

### C.    Class Notice

Subject to the Court's approval, the parties propose to individually notify each class member through U.S. Mail and a website, in compliance with Rule 23(c)(2)(b), to be established and maintained by the settlement administrator. Class members will be able to file claims both electronically and by mail. A copy of the proposed Class Notice is attached hereto as Exhibit B.

---

[4] *See* Footnote 2.

## III.   ARGUMENT

### A.   Legal Principles Governing Preliminary Approval

A court must approve any class action settlement that releases the claims of absent class members. Fed. R. Civ. P. 23(e).   Review of a proposed settlement generally proceeds in two stages:  first, a hearing on preliminary approval, followed by a second hearing, on final approval.  *See Manual for Complex Litigation* § 21.632 (4th ed. 2004); Rule 23(e)(2).

At the preliminary approval stage, a court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted). "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2015); *Manual for Complex Litigation* § 21.632 (4th ed. 2004). After preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See Fresco*, 2007 WL 2330895, at *4; *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

The law generally encourages settlement. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization the compromise is the essence of settlement."); *see also Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("[C]ompromises of disputed claims are favored by the courts."). Furthermore, "settlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (citations omitted).

In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the settlement should be given to Class members, and a hearing scheduled to consider final settlement approval.  The Court is not required at this point to make a final determination as to the fairness of the Settlement—that decision is made only at the final approval stage, after notice of the Settlement has been provided to Settlement Class members and they have had an opportunity to voice their views of the Settlement.  *See* 3B J.W. Moore, Moore's Federal Practice (2d ed. 1996) ¶23.80[2.-1] at 23-479.  Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827

(E.D.N.C. 1994) (issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

### B.     Approval of the Proposal Under Rule 23(e)(2)

Rule 23(e)(2) states that the court may approve the final proposal after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other.

First, as explained in greater detail below, class representatives and class counsel have adequately represented the class. Plaintiffs do not have any interests antagonistic to other class members and have retained lawyers with the necessary qualifications and experience to lead this litigation. *See, e.g.*, *Parsons v. Brighthouse Networks, LLC*, 2:09-CV-267-AKK, 2015 WL 13629647, at *12 (N.D. Ala. Feb. 5, 2015) ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Second, the proposed settlement was negotiated at arm's length and without collusion. *See, e.g.*, *In re Checking Acct.*

*Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"). Third, as explained in greater detail below, the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, and the terms of any proposed award of attorney fees. Finally, the proposal treats class members equitably relative to each other. Every Class Member who submits a valid claim will receive reimbursement of up to $250 (in total) for the listed categories of out-of-pocket expenses, and every Class Member who had monetary out-of-pocket losses attributable to actual identity fraud and/or identity theft as a result of the Security Incident will be eligible to make a claim for reimbursement of up to $5,000.

### C.   The Eleventh Circuit's Standards Governing Class Action Settlements

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, the court must determine whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(A); *see also Carnegie*, 2004 WL 3715446, at *17 ("It is well settled that in order to approve a settlement, the district court must find that it is fair, adequate and reasonable and is not the product of collusion between the parties.") (quoting *Bennett*, 737 F.2d at 986).

As is the case with final approval, a court has wide discretion in making the first-stage determination of the appropriateness of a settlement. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Courts within the Eleventh Circuit apply the *Bennett* factors in considering whether to preliminarily approve a proposed settlement:

> (1) The likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Carnegie*, 2004 WL 3715446, at *17-18 (quoting *Bennett*, 737 F.2d at 986); *see also Parsons*, 2015 WL 13629647, at *2. The *Bennett* factors support preliminary approval.

### 1.      The Benefits Outweigh the Risks at Trial.

The trial court weighs the first *Bennet* factor, the likelihood of success at trial, "against the amount and the form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2:10-CV-01270-MHH, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014); *see also Burrows v. Purchasing*

*Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (granting approval where "success at trial is not certain for Plaintiff[s].").  Although Plaintiffs are confident about their case, the risks involved cannot be disregarded, and success cannot be guaranteed. *See generally In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) ("[T]he trial process is always fraught with uncertainty."). This is particularly true where the case "involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be hotly contested throughout the remaining litigation" and "the ultimately outcome on the merits were uncertain for both Parties." *See Parsons*, 2015 WL 13629647, at *3.  The proposed settlement avoids these uncertainties and provides the class with meaningful and certain relief.

> ### 2.    The Settlement is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable.

The second and third *Bennett* factors—whether the settlement is within the range of possible recoveries and is fair, adequate, and reasonable—are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919, at *3. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, CV-10-S-2440-NE, 2012 WL 12895014,

at *8 (N.D. Ala. Feb. 6, 2012). Thus, even a minimal settlement can be approved. *See, e.g.*, *Burrows*, 2013 WL 10167232, at *6; *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

The settlement is within the range of possible recoveries, considering the risks. The settlement avoids the risks of prolonged litigation, and provides class members with certain, immediate relief. Thus, the settlement agreement is fair, adequate, and reasonable, based on the range of possible recovery.

### 3. Continued Litigation Would Be Expensive and Lengthy.

A settlement that "will alleviate the need for judicial exploration of ... complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. Such is the case here. Approval will avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court. *See, e.g.*, *Parsons*, 2015 WL 13629647, at *4.  A national class action such as this one involves seemingly endless discovery; extensive expert involvement; argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and appeals. The settlement agreement resolves the case without any further delay and

will, if finally approved, offer the class an immediate and certain recovery. Thus, this factor also speaks strongly in favor of final approval of the proposed settlement.

### 4.    The Degree of Opposition to the Settlement.

Courts do not consider this factor until notice has not been provided to settlement class members. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

### 5.    The Stage of Proceedings.

The court looks at the last *Bennet* factor "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Courts have approved settlements at much earlier stages of litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Class Counsel have lived with this case for several years, thoroughly invested the facts and law the results of which are reflected in the consolidated amended complaint, briefed the relevant legal issues, and conducted discovery. *See Parsons*, 2015 WL 13629647, at *12 ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual

underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Settlement here is not premature.

**D.    Conditional Certification of the Settlement Class Under Rule 23(b)(3) for Settlement Purposes Is Appropriate.**

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, Manual for Complex Litigation § 21.632 (4th ed. 2014); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least *one* subsection of Rule 23(b) are satisfied. *See, e.g.*, C*olumbus Drywall*, 258 F.R.D. at 553. Courts have "broad discretion" in applying Rule 23 to a settlement class. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

This case meets the four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).   In addition, the case satisfies the requirements of Rule 23(b)(3): predominance of common issues and superiority of a class action.

**1.    The Settlement Class Satisfies Rule 23(a)**

Fed. R. Civ. P. 23(a) establishes four prerequisites to certification of any class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly

and adequately protect the interests of the class ("adequacy"). The proposed
Settlement Class here satisfies each of these prerequisites.

### a. Numerosity

Rule 23(a)(1) provides that a class action is maintainable only if "the class is
so numerous that joinder of all members is impracticable." "When class size reaches
substantial proportions . . . , the impracticability requirement is usually satisfied by
the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)
(citing 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3.01, at 3-4 (3d ed.
1992)). The Eleventh Circuit's general rule is that "generally less than twenty-one
is inadequate, more than forty adequate, with numbers between varying according
to other factors." *See, e.g.*, *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth
Telecommunications, Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (quoting *Cox v.
Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

Here, there are more than six million members of the proposed Settlement
Class, which is more than sufficient to meet the numerosity requirement under Rule
23(a)(1).

### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the
class." Commonality focuses on the relationship of common facts and legal issues

among class members.  1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).  The commonality requirement is easily met here.

The commonality requirement requires only that there be questions of law or fact common to the class, not to be confused with the higher "predominance" requirement of Rule 23(b)(3). *See Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009). Rule 23(a)(2) "does not require that *all* ... questions of law and fact raised by the dispute be common." *Beaty*, 2012 WL 12895014, at *4 (quoting *Cox*, 784 F.2d at 1557).  "[C]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citation omitted).

Here, Defendants are alleged to have had security procedures in place that led to the breach and subsequent fraudulent usage and replacement of cards.  The issues of whether Defendants are liable for negligence, negligence per se, and breaches of state consumer protection statutes, as well as the extent of the economic harms resulting therefrom, are common to all members of the Settlement Class.

### c.    Typicality

Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the claims of the other settlement class members.  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives

rise to . . . the same legal theory."  The typicality requirement primarily focuses on whether the named plaintiffs' claims "have the same essential characteristics" as claims of other class members. *See, e.g.*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The requirement requires only some nexus between the named plaintiffs' claims and the common questions uniting the class. *See, e.g.*, *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus exists if the claims arise from the same pattern of conduct and there is a similarity of legal theories. *See, e.g.*, *Williams*, 568 F.3d at 1357.

Here, the Class Plaintiffs' claims arise from the same alleged practices and conduct by Defendants with respect to their failure to protect customer PII as do the claims of the other Settlement Class members.  Defendants' alleged conduct pertaining to proof of liability would not differ among Settlement Class Members. Thus, the Class Plaintiffs' claims are typical of the claims of the other Settlement Class members.[5]

---

[5]  Note that Article III's "injury-in-fact" requirement may be satisfied for the entire settlement class where one plaintiff has established standing. 1 Newberg on Class Actions § 2.05 at 2–29 ("Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense."); *see also In re: Takata Airbag Products Liab. Litig.*, 14-24009-CV, 2016 WL 6072406, at *8 (S.D. Fla. Oct. 14, 2016) ("A class action can be maintained by one class representative with proper standing.") (citations omitted); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a

### d.    Adequacy

Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."  In assessing the adequacy requirement, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Here, the proposed Settlement Class Representative, William Lutz, has no interests antagonistic to the other Settlement Class members' interests and each has fulfilled, and will continue to fulfll, his duty to the Settlement Class by remaining informed of and providing informal discovery related to the negotiations with Settling Defendants and by approving the Settlement.   The Settlement Class Representative's interests are aligned with all Settlement Class members, as they all suffered the same harm as a result of Defendants' conduct.

Second, Plaintiffs have retained counsel who are qualified and experienced to litigate this action, and whom were appointed by the Court to lead this case from the outset [ECF 12].  Class Counsel have represented plaintiffs in numerous class action cases over the past decades, including similar class actions involving data breaches, and are respected firms involved in complex litigation.  Moreover, Class Counsel

---

class representative has standing, whether in the context of a settlement or litigation class."); *In re Nexium Antitrust Litig.*; 777 F.3d 9, 14, 17 (1st. Cir. 2015); *Kohen  v. Pac. Mgmt Co.*, 571 F.3d 672, 676 (7th Cir. 2009).

exhibited the desire and expertise to vigorously prosecute this class action and to successfully negotiate a compromise of this litigation.  The requirement is thus met.

> **2.     The Settlement Class Meets the Requirements of Rule 23(b)(3)**

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).

> **a.     Predominance**

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ."  Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action.  *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986).  Common questions, however, need not be dispositive of the entire action, because to "predominate" under the rule does not mean to be "determinative." *Id*. at 528-29.

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Predominance does not require that all questions be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022

(9th Cir. 1998) (internal quotations omitted). Notably, any individual issues that relate to damages does not defeat predominance. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'"). The only individual issues here relate to damages. The predominance requirement is met here because the overwhelming issues of law and fact are common to all class members.

### b.    Superiority

Rule 23(b)(3) also requires that the Court find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"The inquiry into whether the class action is the superior method for a particular case focuses on increased efficiency." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 700 (S.D. Fla. 2004). Litigating the claims of thousands of class members, requiring presentation of the same evidence and expert opinions over and over again, would obviously be inefficient. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate

individually . . . most of the plaintiffs would have no realistic day in court if a class action were not available.").

In sum, the Settlement Class's claims satisfy the Rule 23(b)(3) requirements, and should be certified.

### E.     The Proposed Class Notice Is Adequate

Rule 23(e) provides that "notice of the proposed ... compromise shall be given to all members of the class in such manner as the court directs." Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975). There is no single way in which the notice must be transmitted. However, "mail is the preferred means for notifying identified members of a class," W. Rubenstein, Newberg on Class Actions, §8:28 at 310 (5th ed. 2013), and is sufficient when the class members are known. 7B C. Wright & A. Miller, *Federal Practice and Procedure* § 1797.6 at 200 (3rd ed. 2005).

The parties, therefore, propose to notify class members individually by mail in the form attached hereto as Exhibit C. The identity and addresses of individual class members are known from accessible contact information enabling direct postal

notice to all members of the Settlement Class. And reasonable efforts will be made to re-mail notices to class members whose initial notice was returned as undeliverable. The notice itself is written in plain English; describes the litigation, the claims being made, and the terms of the settlement; and informs class members about the deadlines and their rights to opt out or object. In addition, a website will be established where class members will be able to view and download copies of pleadings, orders, and the documents relating to the settlement and class members will be able to call a toll free number for further information.

This notice program satisfies the requirements of due process and Rule 23 and thus should be approved. *See, e.g.*, *Grunin*, 513 F.2d at 121 (individualized mail notice sufficient when class members can be identified); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *6 (M.D. Fla. Nov. 19, 2009) (approving notice by first class mail to most recent known address). The Class Notice satisfies Rule 23's directives and the due process clause requirements because the Settlement Class will be alerted to and informed about the Settlement, their rights, and their opportunity to appear and be heard at the Fairness Hearing. *See Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988).

Finally, the parties have chosen Epiq to serve as the Claims Administrator in this matter based on its experience and expertise in the area of data breach notice and claims administration in particular.

## IV.  CONCLUSION

For all of the foregoing reasons, Class Plaintiffs, by their counsel, request that the Court grant their motion and enter the order proposed by the parties to: (1) preliminarily approve the proposed settlement; (2) certify the proposed settlement class; and (3) approve the proposed notice program.

Filed: December 10, 2018                         Respectfully Submitted,

                                                                *s/ Karen H. Riebel*
                                                                Karen H. Riebel
                                                                LOCKRIDGE GRINDAL NAUEN PLLP
                                                                100 Washington Ave. S., Suite 2200
                                                                Minneapolis, MN  55401
                                                                khriebel@locklaw.com

                                                                Jeff Friedman (asb-6868-n77j)
                                                                FRIEDMAN, DAZZIO ZULANAS &
                                                                BOWLING, P.C.
                                                                P. O. Box 43219
                                                                Birmingham, AL  35243-3219
                                                                jfriedman@friedman-lawyers.com

                                                                Chris Hellums
                                                                PITTMAN DUTTON & HELLUMS, PC
                                                                2001 Park Place, Ste. 1100
                                                                Birmingham, AL  35203-2716
                                                                chrish@pittmandutton.com

                                                                ***Attorneys for Plaintiffs***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record on this 10th day of December, 2018.

<u>/s/    Karen H. Riebel</u>

531042.5                                                                                     24