FILED
2019 Aug-06  PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **IN RE COMMUNITY HEALTH SYSTEMS, INC., CUSTOMER DATA SECURITY BREACH LITIGATION**<br><br>(MDL 2595) | ) ) ) ) ) ) ) ) ) ) | Master File No.<br><br>15-CV-222-KOB<br><br><br>This Document Relates to All Cases<br><br>Judge Karon O. Bowdre |

## <u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement, dated as of December 10, 2018, is made and entered into by and among the following Settling Parties (as defined below): (i) William Lutz (the "Representative Plaintiff"), individually and on behalf of the Settlement Class (as defined below), by and through Karen Hanson Riebel and Jeffrey E. Friedman (together, "Proposed Class Counsel" or "Class Counsel"); and (ii) Community Health Systems Professional Services Corporation n/k/a CHSPSC, LLC ("CHSPSC"), by and through its counsel of record, lead counsel Daniel R. Warren of Baker & Hostetler LLP and Richard E. Smith of Christian & Small LLP.  The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## RECITALS

*Whereas*, CHSPSC is a limited liability company that provides certain business management and consulting services to affiliated hospitals and physician clinics located in many states;

*Whereas*, in July 2014, CHSPSC confirmed that its computer network system was the target of an external criminal-cyberattack in April and June 2014, which is believed to have been perpetrated by an Advanced Persistent Threat group originating from China (the "Incident" or the "Security Incident");

*Whereas*, since the time the Security Incident was first discovered CHSPSC worked closely with cybersecurity professionals engaged by counsel and federal law enforcement officials to identify the scope of the Incident and to remediate CHSPSC's computer network systems;

*Whereas*, during the forensic investigation CHSPSC learned that the data exfiltrated by the cyberattackers included personal information for patients of certain CHSPSC affiliated physician practices and clinics, including names, addresses, birthdates, social security numbers, and, in some instances, telephone numbers, and the names of employers and/or guarantors;

*Whereas*, on August 18, 2014, CHSPSC publicly announced the Security Incident and subsequently mailed individual notice regarding the Incident to affected patients;

*Whereas*, following public disclosure of the Incident plaintiffs filed numerous lawsuits against CHSPSC and affiliated entities over the Incident in both state and federal court, including *Lisa Maes, et al. v. Community Health Systems Professional Services Corporation, et al.,* No. 1:14-cv-01090 (D.N.M); *Denise B. Alverson et al. v. Community Health Systems Inc. et al.*, No. 2:14-cv-01620 (N.D. Ala.); *Braquelle Lawson et al. v. Community Health Systems Inc. et al.*, No. 3:14-cv-00712 (S.D. Miss.); *Briana Brito v. Community Health Systems Inc. et al.*, No. 1:14-cv-00929 (D.N.M); *Susan Roman v. Community Health Systems Inc. et al.*, No. 3:14-cv-01705 (M.D. Pa.); *Mary Martin Glah et al. v. Community Health Systems Inc. et al.*, No. 2:14-cv-25783 (S.D. W. Va.); *Ashley Veciana v. Community Health Systems, Inc., et al.*, No. 8:14-cv-02893-VMC-AEP (M.D.Fla.); *Jeremy L. Murphy v. Community Health Systems, Inc., et al.*, No. 3:15-cv-00031 (M.D.

Tenn.); *William Lutz v. Community Health Systems, Inc., et al.*, No. 2:14-cv-06433-RBS (E.D. Pa.);

Whereas, on February 4, 2015, the United States Judicial Panel on Multidistrict Litigation consolidated all pending and future federal court cases over the Security Incident for coordinated pretrial proceedings under 28 U.S.C. § 1407 in the Northern District of Alabama before the Honorable Karen O. Bowdre, captioned as *In Re: Community Health Systems, Inc. Customer Data Security Breach Litigation*, No. 15-cv-222 (N.D. Ala.);

Whereas, on June 29, 2015, numerous plaintiffs filed a Consolidated Class Action Complaint in the Multi-District Litigation proceeding, and on July 20, 2015, plaintiffs filed an Amended Consolidated Class Action Complaint (the "Amended Complaint");

Whereas, the Amended Complaint contained the claims of forty plaintiffs from twenty-four different states, asserting eleven causes of action under both state and federal law against defendants CHSPSC and its indirect parent company, Community Health Systems, Inc. ("CHSI"), a holding company that has no employees;

Whereas, on September 21, 2015, CHSPSC and CHSI filed motions to dismiss the Amended Complaint, arguing plaintiffs lacked standing to sue CHSPSC and CHSI over the cyberattack, the Court lacked personal jurisdiction over CHSI with respect to any action not filed in the State of Tennessee, and that the Amended Complaint failed to state a claim for which relief can be granted under Rule 12(b)(6);

Whereas, on February 10, 2016, the Court heard oral argument on CHSPSC and CHSI's motions to dismiss, and on February 17, 2016, issued a preliminary order granting the motions in part and denying the motions in part, and requesting additional briefing on plaintiffs' statutory standing under the federal Fair Credit Reporting Act and on state choice-of-law issues;

Whereas, on April 15, 2016, the Court again heard oral argument on CHSPSC's and CHSI's motions to dismiss to address the outstanding issues that remained on the motions;

Whereas, on September 12, 2016, the Court issued a comprehensive final order granting in part and denying in part CHSPSC's and CHSI's motions to dismiss, including ruling as follows:

(1) thirty of the forty named plaintiffs did not have constitutional standing to sue CHSPSC or CHSI over the cyberattack on CHSPSC's computer network systems; (2) the Court did not have personal jurisdiction over CHSI except with respect to complaints filed in Tennessee; and (3) the ten remaining plaintiffs had stated valid claims for relief against CHSPSC and CHSI under several different state common law theories of relief;

*Whereas*, on October 20, 2016, plaintiffs filed a motion for interlocutory appeal under 28 U.S.C. § 1292(b) with respect to certain aspects of the Court's jurisdictional rulings relating to standing of the individual named plaintiffs;

*Whereas*, on February 15, 2017, the Court denied plaintiffs' motion for interlocutory appeal without prejudice, allowing plaintiffs leave to file an amended motion for interlocutory appeal to re-frame the proposed questions on appeal;

*Whereas*, on March 15, 2017, plaintiffs filed an amended motion for interlocutory appeal, again raising questions regarding certain aspects of the Court's jurisdictional rulings;

*Whereas*, the Court denied the renewed motion for interlocutory appeal on May 19, 2017, following a case management conference;

*Whereas*, following the denial of plaintiffs' motion for interlocutory appeal, the parties engaged in discovery regarding the merits of plaintiffs' remaining common law claims while at the same time discussing a potential resolution of the Multi-District Litigation;

*Whereas*, over the course of numerous months the parties engaged in arm's length settlement negotiations among themselves, and on March 7, 2018, reached a preliminary agreement on terms for a nationwide class action settlement;

*Whereas*, this Agreement sets forth the final understanding of the parties regarding the settlement of the Multi-District Litigation proceedings against CHSPSC and CHSI over the cyberattack on CHSPSC's computer network systems;

*Whereas*, pursuant to these terms, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against CHSPSC and the Released Persons relating to the Security Incident, by and on behalf of the Representative Plaintiff

and Settlement Class Members, including any and all appellate rights, as well as any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against CHSPSC relating to the Security Incident (collectively, the "Litigation");

NOW, THEREFORE,  IT IS HEREBY STIPULATED AND AGREED,  by and  among Representative Plaintiff, individually and on behalf of the Settlement Class, Class Counsel, and CHSPSC that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except  those Settlement Class Members who properly opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

## I.   DEFINITIONS.

As used anywhere in the Settlement Agreement, including the Recitals, the following terms have the meanings specified below:

1.1     "Agreement" or "Settlement Agreement" means this agreement.

1.2     "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator, as set forth in this Agreement.

1.3     "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4     "Claims Administrator" means Epiq, an experienced class action claims administrator generally, and specifically those of the type provided for and made in data breach litigation, subject to Court approval.

1.5     "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.1.

1.6     "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7     "Effective Date" means the first date by which all of the events and conditions specified in ¶ 9.1 herein have occurred and been met.

1.8     "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.9     "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit 1, or a judgment substantially similar to such form.

1.10    "Notice Specialist" means Cameron Azari of Epiq, a notice specialist with recognized expertise in class action notice generally and data security litigation specifically, subject to Court approval.

1.11    "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.12    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, agents and/or assignees.

1.13    "Personal Information" means information that is or could be used, whether on its own or in combination with other information, to identify, locate or contact a person, including, without limitation:  names, addresses, birthdates, social security numbers, telephone numbers, and the names of employers and/or guarantors.

1.14    "Plaintiffs' Counsel" means Class Counsel or Proposed Class Counsel and the other attorneys who have represented plaintiffs in the Multi-District Litigation.

1.15    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.  The Settling Parties' proposed form of Preliminary Approval Order is attached as Exhibit 2.

1.16     "Class Counsel" or "Proposed Class Counsel" means Karen Hanson Riebel and Jeffrey E. Friedman.

1.17    "Related Entities" means CHSPSC's past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, whether direct or indirect, as well as each of CHSPSC's and these entities' respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any individual who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

1.18    "Released Claims" shall collectively mean any and all claims and causes of action including, without limitation, any causes of action for or under 18 U.S.C. § 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; the Fair Credit Reporting Act, and all similar statutes in effect in any states in the United States as defined herein; State Consumer Laws, as alleged in ¶ 214 of the Amended Complaint, and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory

damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by or on behalf of any Representative Plaintiff or Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Security Incident and alleged theft of payment card data or other personal information or the allegations, facts, or circumstances described in the Litigation.  Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely and properly opted out of the Settlement Agreement and thus excluded themselves from the Settlement Class.

1.19    "Released Persons" means CHSPSC and its Related Entities, including, as set forth in ¶ 1.17, each of their past or present parents, subsidiaries, divisions, and related or affiliated entities of any nature whatsoever, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, representatives, attorneys, insurers, and reinsurers.

1.20    "Representative Plaintiff" means William Lutz.

1.21    As set forth in the Recitals, "Security Incident" or "Incident" means the cyberattack against CHSPSC's computer systems that was publicly disclosed on August 18, 2014, as further described in the Recitals;

1.22    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.23    "Settlement Class" means: All residents of the United States whose Personal Information was affected during the cyberattack on CHSPSC's computer network systems that was publicly announced on August 18, 2014.

1.24    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.25    "Settling Parties" means, collectively, CHSPSC and the Representative Plaintiff, individually and on behalf of the Settlement Class.

1.26   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any of the Representative Plaintiff, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, the Representative Plaintiff expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including the Representative Plaintiff, may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Released Claims, but the Representative Plaintiff expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and  released  any  and  all Released  Claims.  The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.27   "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

## II.   MONETARY RELIEF.

2.1   <u>Response Expense Reimbursement Claim</u>.   All Settlement Class Members who submit a valid claim using the form attached as Exhibit 3 to this Settlement Agreement ("Claim Form") are eligible to receive reimbursement for the following out-of-pocket expenses incurred in response to notice of the Security Incident, in an amount not to exceed $250.00 per Settlement Class Member: (i) the costs of credit monitoring and identity theft protection services purchased by Settlement Class Members between August 18, 2014, and the Claims Deadline, where there is an affirmative statement by the Settlement Class Member that the monitoring or service was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase; (ii) up to five hours of documented lost time spent dealing with the Security Incident or identity fraud allegedly resulting from the Security Incident calculated at the rate of $15.00 per hour, but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form; (iii) the costs of credit report(s) purchased by Settlement Class Members between August 18, 2014, and the Claims Deadline, with an affirmative statement by Settlement Class Member that the credit report(s) was purchased primarily because of the Security  Incident; and (iv) other incidental expenses attributable to the Security Incident, including, by way of example, payments for credit freezes, unreimbursed overdraft fees, unreimbursed charges related to unavailability of funds, unreimbursed late fees, long distance telephone charges, cell phone minutes (if charged by minute), Internet usage charges (if charged by the minute) and text messages (if charged by the message), where there is an affirmative statement by Settlement Class Member that these incidental expenses were primarily incurred because of the Security  Incident.

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a written Claim Form to the Claims Administrator, postmarked on or before the Claims Deadline, which shall be the 180th day after the deadline for the completion of notice to Settlement

Class Members set forth in ¶ 3.3.  The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury.  Notarization shall not be required.  The Settlement Class Member must submit reasonable documentation that the out-of-pocket expenses and charges claimed were both primarily incurred because of, and plausibly arose from, the Security Incident.  Failure to provide supporting documentation as requested on the Claim Form shall result in denial of a claim.  Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.3.

2.2     <u>Fraud Loss Reimbursement Claim</u>.  All Settlement Class Members who submit a valid claim using the Claim Form shall also be eligible to receive reimbursement for monetary out-of-pocket losses attributable to actual identity fraud and/or identity theft that are claimed by the Settlement Class Member to have occurred as a result of the Security Incident, in an amount not to exceed $5,000.00 per Settlement Class Member, subject to the following conditions: (a) the actual identity fraud and/or identity theft is an actual, documented, and unreimbursed monetary loss; (b) the actual identity fraud and/or identity theft was more likely than not caused by the Security Incident; (c) the actual identity fraud and/or identity theft occurred during the time period from April 1, 2014, through and including the end of the applicable claims period (*see ¶* 2.2.2, *infra*)*;* (d) is not already covered by one or more of the categories in ¶ 2.1; and (e) the claimant made reasonable efforts to avoid or seek reimbursement for the loss including but not limited to exhaustion of all credit monitoring insurance and identity theft insurance in place at the time of the Security Incident, as required under ¶ 2.2.2.  Settlement Class Members with claims under this paragraph may also submit claims for reimbursement benefits under ¶ 2.1.

2.2.1     Claimants seeking reimbursement for expenses or losses described in ¶ 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses, postmarked on or before the Claims Deadline.

2.2.2     Claimants must exhaust all credit monitoring insurance and identity theft insurance in place at the time of the Security Incident before CHSPSC is responsible for any

expenses claimed pursuant to ¶ 2.2 of this Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  To be valid, claims for fraud loss reimbursement must be complete and submitted to the Claims Administrator on or before the Claims Deadline. No payment shall be made for emotional distress, personal/bodily injury, or punitive damages.  For claims in excess of $200.00, the Settlement Administrator may request, and the claimant must disclose upon request, each other notice of a breach of their payment card data or other personal information they received in the three-year period that preceded the date of their claim hereunder; if the claimant has received no such notice, the claimant must so state.

      2.3    <u>Claims Administration & Resolution.</u>

      2.3.1    The Claims Administrator, in its sole discretion to be reasonably exercised but consistent with ¶ 2.2.2, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the expenses described in ¶ 2.1 or ¶ 2.2; and (3) the information submitted could lead a reasonable person to conclude, for a claim submitted under ¶ 2.1, that the alleged expense plausibly arose from the Security Incident, and, for a claim submitted under ¶ 2.2, that the fraudulent loss more likely than not occurred as a result of the Security Incident (collectively, "Facially Valid").  The Claims Administrator may, at any time, request from the claimant in writing additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for benefits, and claims previously made for identity theft and the resolution thereof.

      2.3.2    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant 30 days to cure the defect before rejecting the claim.  Requests for Claim

Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes latest.  In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (e.g., illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date.  If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.3.3   Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim.  If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, either in whole or in part, then the claim shall be paid in accordance with ¶¶ 8.1-8.2, to the extent that the Claims Administrator finds the claim to be valid.  If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action, subject to the provisions of ¶ 2.3.2.

2.3.4   Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator.  If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final determination.  If the final determination is approved by the claimant, then the approved amount shall be the amount to be paid.

2.4   <u>Aggregate Cap on Claims.</u>  The aggregate amount of claims reimbursement under ¶¶ 2.1-2.3 above for which CHSPSC shall be responsible to pay shall be capped at $3,100,000.00.  If the total amount of Facially Valid claims submitted under paragraphs 2.1-2.3 above exceed the

$3,100,000.00 cap, each individual claim amount shall be reduced in a pro rata amount so that the aggregate claims reimbursement is exactly $3,100,000.00.

2.5     Settlement Class Certification.   The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.  The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.6     Confidentiality of Information Submitted by Settlement Class Members.   Information submitted by Settlement Class Members pursuant to ¶¶ 2.1 through 2.3 of this Settlement Agreement shall be deemed confidential and protected as such by CHSPSC and the Claims Administrator.

2.7     Confirmatory Discovery.   CHSPSC confirms that steps were taken in response to the Security Incident and that the Representative Plaintiff shall be entitled to take confirmatory discovery or request reasonable confirmatory declarations with respect to this statement. Confirmatory discovery or reasonable confirmatory declarations also may be requested as to the size of the Settlement Class as defined in ¶ 1.23.

III.     ORDER OF PRELIMINARY APPROVAL AND PUBLISHING OF NOTICE OF FAIRNESS HEARING.

3.1     As soon as practicable after the execution of the Settlement Agreement, Class Counsel and counsel for CHSPSC shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a

Preliminary Approval Order in the form attached hereto as Exhibit 2, or an order substantially similar to such form in both terms and cost, requesting, *inter alia:*

      (a)     certification of the Settlement Class for settlement purposes only;

      (b)     preliminary approval of the Settlement Agreement as set forth herein;

      (c)     appointment of proposed Class Counsel as Settlement Class Counsel;

      (d)     appointment of the Representative Plaintiff as class representative;

      (e)     approval of a form of notice, which includes a notice to be individually mailed to the Settlement Class Members in a form substantially similar to the one attached hereto as Exhibit 4, as well as a detailed long form notice attached hereto as Exhibit 5 that will be posted on the website addressed in ¶ 3.3;

      (f)     appointment of Cameron Azari as Notice Specialist or such other Notice Specialist as jointly agreed to by the Settling Parties;

      (g)     appointment of Epiq as Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties; and

      (h)     approval of a Claim Form substantially similar to that attached hereto as Exhibit 3.  *See* ¶¶ 2.1 and 2.2 above.

The Notice and Claim Form shall be reviewed by the Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2     CHSPSC shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration.  Attorneys' fees, costs, and expenses of Class Counsel, and incentive awards to the Representative Plaintiff, shall be paid by CHSPSC as set forth in paragraph 7 below.  Notice shall be provided to Settlement Class Members via the physical addresses for class members that CHSPSC has in its records.  The notice plan shall be subject to approval by the Court as meeting constitutional due process requirements.

3.3     The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the Notice Form and Claim Form approved by the Court, as well as this Settlement Agreement.  A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries.  The Claims Administrator also will provide copies of the forms of the Notice and Claim Form approved by the Court, as well as this Settlement Agreement, to Settlement Class Members upon request.  Prior to the Final Fairness Hearing, Proposed Class Counsel and CHSPSC shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice.  The Notice and Claim Form approved by the Court may be adjusted by the Notice Specialist and/or Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and necessary and not inconsistent with such approval.  The Notice Program shall commence within thirty (30) days of the Preliminary Approval Order, and the initial mailings of the individual settlement notice shall be completed within 45 days of the Preliminary Approval Order.

3.4     Proposed Class Counsel and CHSPSC's counsel shall request that the Court hold a hearing and grant final approval of the settlement set forth herein (the "Final Fairness Hearing") on a date after notice and opt out procedures are substantially completed and, pursuant to 28 U.S.C. § 1715(b) & (d), no earlier than 100 days after the Settlement Agreement was filed with the Court.

**IV.     OPT-OUT PROCEDURES.**

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked no later than one hundred twenty (120) days after the date on which the Notice Program commences pursuant to ¶ 3.3.

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive

any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, that there have been Opt-Outs (exclusions) totaling more than five-hundred individuals, CHSPSC may void this Settlement Agreement by notifying Proposed Class Counsel in writing.  If CHSPSC voids the Settlement Agreement pursuant to this paragraph, CHSPSC shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Class Counsel and Plaintiffs' Counsel and incentive award to the Representative Plaintiff and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## V.     OBJECTION PROCEDURES.

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of settlement notice, copy of original notice of the Security Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector, if any; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing, if any; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection, if any; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation), if any; (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed

an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court no later than one hundred twenty (120) days from the date on which the Notice Program commences pursuant to ¶ 3.3, and served concurrently therewith upon Proposed Co-Lead Settlement Class Counsel, Karen Hanson Riebel, Lockridge Grindal Nauen P.L.L.P., 100 Washington Ave. S., Suite 2200, Minneapolis, Minnesota, 55401; and counsel for CHSPSC, David A. Carney, Baker & Hostetler LLP, 127 Public Square, Suite 2000, Cleveland, Ohio, 44114.

5.2     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**VI.   RELEASE.**

6.1     Upon the Effective Date, each Settlement Class Member, including the Representative Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all Released Persons, as defined in ¶¶ 1.17-1.19 and 1.26. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including the Representative Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the

general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim(s) is/are asserted.

## VII.   PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES; INCENTIVE AWARD TO REPRESENTATIVE PLAINTIFF.

7.1     The Settling Parties did not negotiate the payment of the Representative Plaintiff's attorneys' fees, costs and expenses, as provided for in ¶ 7.2, until after the substantive material terms of the settlement had been agreed upon, other than that CHSPSC would pay reasonable attorneys' fees, costs, and expenses as may be agreed to by CHSPSC and Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.

7.2     Plaintiffs' Counsel has agreed to request the total amount of $900,000.00 from the Court for their attorneys' fees, reasonable costs and expenses of all cases against CHSPSC that they have pursued over the Security Incident.  CHSPSC agrees not to object to this request, and to pay the amount the Court awards to Class Counsel for their attorneys' fees, reasonable costs and expenses, up to and including $900,000.00, and no more than that amount.  Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3     Subject to Court approval, CHSPSC has also agreed to pay an incentive award in the amount of $3,500.00 to the Representative Plaintiff.

7.4     Within fifteen (15) business days after the Effective Date, CHSPSC shall pay the attorneys' fees, costs, expenses, and any incentive award to the Representative Plaintiff, as set forth above in ¶¶ 7.2 and 7.3, to an account established by Proposed Settlement Class Counsel. Proposed Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and incentive award to the Representative Plaintiff consistent with ¶¶ 7.2 and 7.3.

7.5     The amount(s) of any award of attorneys' fees, costs, and expenses, and the incentive award to the Representative Plaintiff, are intended to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or incentive award ordered by the Court to Proposed Settlement Class Counsel or the Representative Plaintiff shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

## VIII.  ADMINISTRATION OF CLAIMS.

8.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2. Proposed Class Counsel and CHSPSC shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Claims Administrator's determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.3. All claims agreed to be paid in full or in part by CHSPSC shall be deemed valid up to the amount paid.

8.2     Checks for approved claims shall be mailed and postmarked after the Effective Date and within sixty (60) days of the Effective Date and/or thirty (30) days of the date that the claim is approved, whichever is latest.

8.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Claims Administrator, CHSPSC, Proposed Class Counsel, Plaintiffs' Counsel, CHSPSC's counsel, and/or the Representative Plaintiff based on distributions of benefits to Settlement Class Members.

**IX.    CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION.**

9.1     The Effective Date of the settlement shall be the date on which the last of the following events occurs:

(a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

(b)     CHSPSC has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3 and the time for CHSPSC to do so has elapsed;

(c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

(d)     the Judgment has become Final, as defined in ¶ 1.8.

9.2     If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Class Counsel and CHSPSC's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Class Counsel and to CHSPSC's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (a) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement and statements made in connection with seeking approval of the Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.*  Notwithstanding any statement in this Settlement Agreement to the contrary, no

order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or incentive awards shall constitute grounds for cancellation or termination of the Settlement Agreement.  Further, notwithstanding any statement in this Settlement Agreement to the contrary, CHSPSC shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class and Claims Administration and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## X.    MISCELLANEOUS PROVISIONS.

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this Agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons

may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document.   Except as otherwise provided herein, each party shall bear its own costs.   This agreement supersedes all previous agreements made by the parties.

10.6    Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by the Representative Plaintiff to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.7    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.8    The Settlement Agreement may be executed in one or more counterparts.   All executed counterparts and each of them shall be deemed to be one and the same instrument.   A complete set of original executed counterparts shall be filed with the Court.

10.9    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.10   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the

Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.11   The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Tennessee, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Tennessee without giving effect to choice of law principles.

10.12   As used herein, "he" means "he, she, they, or it;" "his" means "his, hers, theirs, or its," and "him" means "him, her, their, or it.''

10.13   All dollar amounts are in United States dollars (USD).

10.14   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits.  All settlement checks shall be void one hundred twenty (120) days after issuance and shall bear the language: "This check must be cashed within 120 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until one hundred eighty (180) days after the Effective Date to request re-issuance.  If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and CHSPSC shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1 or ¶ 2.2 or any other type of monetary relief.  The same provisions shall apply to any re-issued check.  For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.15   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Representative Plaintiff and Class Counsel

Counsel for CHSPSC and Duly Authorized Signatory

Dated: 12/10 , 2018

By:

Dated: _____, 2018

By:

Dated: 12/10 , 2018

By:

Dated: _____, 2018

By:

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Representative Plaintiff and Class Counsel

Counsel for CHSPSC and Duly Authorized Signatory

Dated: _____, 2018

By:

Dated: _12/10/18_____, 2018

By: Tom Aaron, CFO

Dated: _____, 2018

By:

Dated: _December 7_, 2018

By: David Carney, Partner

25